United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 27, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-70027

_____

CHARLES ANTHONY NEALY,

Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, CORRECTIONAL
INSTITUTIONS DIVISION,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:01-CV-02274

_____

Before JOLLY, HIGGINBOTHAM, and WIENER, Circuit Judges.

PER CURIAM:[1]

Charles Anthony Nealy ("Nealy") was convicted of capital murder and sentenced to death for the 1997 murder of Jiten Bhakta ("Jiten") during an armed robbery of the convenience store owned by Jiten. He requests a certificate of appealability ("COA") to appeal the district court's denial of federal habeas relief for three claims. The request is GRANTED in part, and DENIED, in part.

_____

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

At trial, Satishbhi Bhakta ("Bhakta") testified that his brother, Jiten, owned the Expressway Mart in Dallas. On August 20, 1997, at about 8:20 p.m., Bhakta was helping at the store with another employee, Vijay Patel, while Jiten was in the office taking a nap. Two men, one armed with a shotgun and the other with a pistol, entered the store. The men ordered Patel and Bhakta to lie down on the floor. The man with the shotgun went into the office. Bhakta heard Jiten call out and then heard the shotgun discharge. Jiten died from a shotgun wound to the chest. The man with the pistol then shot Patel in the head; he died a few days later. The man with the shotgun came out of the office with a briefcase (containing $4,000) and said, "I got the man in the office." The man with the pistol said, "I got one over here, too." The man with the pistol ordered Bhakta to open the cash register, and the man with the shotgun took money from the register and put it in his pocket. Both of the robbers took wine and beer before leaving the store. At trial, Bhakta identified Nealy as the man with the shotgun.

Four video cameras in the store recorded the robbery. The videotape was played for the jury. Although the tape was of poor quality, it showed a man with a light-colored hat, and a man wearing a dark hat carrying a shotgun. The tape did not record either of the murders, but it recorded the two men stealing money from the cash register.

Nealy's nephew, Memphis Nealy ("Memphis"), testified that between 5:00 and 7:00 p.m. on the evening of the robbery, he was riding with Nealy on Central Expressway. When they passed the convenience store, Memphis said that Nealy stated, "I'm going to come back and get 'em." Nealy did not want Memphis to participate in their return to the Expressway Mart because Memphis did not have a criminal record.

At trial, Memphis testified that he recognized Nealy, Claude Nealy ("Claude" -- Nealy's nephew and Memphis's brother), and Reginald Mitchell on the videotape of the robbery. Memphis identified Nealy as the man wearing the dark hat and carrying the shotgun and briefcase. On cross-examination, Memphis admitted that he was unable to identify anyone from the videotape until the police told him that his uncle and brother were on the tape.

Reginald Mitchell, a co-defendant, testified at trial that on the night of the robbery, he joined Claude and Nealy in Nealy's car and went to the Expressway Mart. Mitchell stated that Claude and Nealy entered the store, and that Nealy had a shotgun, although he did not see it. He testified that Claude had a .38 or .32 pistol. Mitchell testified that he first heard a shotgun blast and then small arms fire. Nealy and Claude came out of the store and got into the car. Mitchell testified that Nealy said, "This is the way the Nealys do it." When they got back to Nealy's house, Nealy said that they committed the crime because "the bitches" wouldn't sell him "no Blackie mounds" (referring to a type of cigar). Mitchell

3

testified that Nealy threatened to kill him if he told anyone about the robbery.

Nealy was convicted of capital murder and sentenced to death. The Texas Court of Criminal Appeals affirmed his conviction and sentence on direct appeal. Nealy v. State, No. 73,267 (Tex. Crim. App. September 13, 2000) (unpublished), cert. denied, 531 U.S. 1160 (2001).

In October 2001, the Texas Court of Criminal Appeals adopted the trial court's recommendation and denied Nealy's application for state habeas relief. Ex parte Nealy, No. 50,361-0-1 (Tex. Crim. App. October 24, 2001) (unpublished). In May 2005, the district court adopted the magistrate judge's recommendation and denied Nealy's petition for federal habeas relief. The district court also denied Nealy's request for a COA. As we have noted, Nealy now requests a COA from this court to appeal the denial of relief as to three claims.

II

To obtain a COA, Nealy must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(A). To make such a showing, he must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In making our decision whether to grant a COA, we conduct a "threshold

4

inquiry", which consists of "an overview of the claims in the habeas petition and a general assessment of their merits." Id. at 327, 336. "While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case any doubts as to whether a COA should issue must be resolved in the petitioner's favor." Ramirez v. Dretke, 398 F.3d 691, 694 (5th Cir. 2005) (internal quotations and citations omitted).

A

Based on our limited, threshold inquiry and general assessment of the merits of the three claims for which Nealy requests a COA, we conclude that the following claim presents issues that are adequate to deserve encouragement to proceed further: whether the evidence was sufficient to prove beyond a reasonable doubt the essential elements of the offense of capital murder. Accordingly, we GRANT a COA for this claim. If petitioner Nealy wishes to file a supplemental brief with respect to the merits of this claim, he may do so within thirty days of the date that this order is filed. A supplemental brief should be filed only to address matters that have not already been covered in the brief in support of the COA application. The State may file a response fifteen days thereafter.

B

Nealy has failed to demonstrate that jurists of reason could disagree with or find debatable the district court's resolution of the issues presented in the following claims, and we therefore DENY

5

his request for a COA for those claims, for the reasons set forth below.

1

Nealy seeks a COA for his claim that the trial court's failure to allow him to inform the jury of his parole eligibility if the death penalty were not assessed violated his constitutional rights to equal protection, effective assistance of counsel, due process, and protection from cruel and unusual punishment.

At trial, Nealy filed motions to question the venire, present evidence, and instruct the jury regarding his parole eligibility -- that is, if sentenced to life in prison, he would not be eligible for parole for forty years. The trial court denied the motions.

On direct appeal, citing <u>Simmons v. South Carolina</u>, 512 U.S. 154 (1994), and Justice Stevens's opinion on the denial of certiorari in <u>Brown v. Texas</u>, 522 U.S. 940 (1997), Nealy argued that the trial court's denial of his motions deprived him of due process and subjected him to cruel and unusual punishment. The Court of Criminal Appeals affirmed.

In state habeas proceedings, Nealy asserted that the trial court's denial of his motions violated equal protection, due process, his right to be free from cruel and unusual punishment, and his right to the effective assistance of counsel. The state habeas court held that the equal protection claim was procedurally barred because it could have been raised on direct appeal; alternatively, that the absence of parole information did not

6

violate equal protection. The state habeas court held that the Sixth, Eighth, and Fourteenth Amendment claims were procedurally barred because they were raised and rejected on direct appeal; alternatively, that Nealy's right to due process, his right against cruel and unusual punishment, and his right to effective assistance of counsel were not violated by the court's rulings that prevented the jury from considering parole during the punishment phase. In addition, the court noted that the Texas Court of Criminal Appeals had repeatedly refused to extend the holding in Simmons to defendants who are eligible for parole. Finally, the court observed that because the jurors were not told about the possibility of parole, they may have considered a term of "life" to mean Nealy's natural life, and thus Nealy probably benefitted from the lack of an instruction on parole eligibility.

In his federal habeas petition, Nealy claimed that he is entitled to relief because the trial court's failure to allow him to inform the jury of his parole eligibility if the death penalty were not assessed violated his constitutional rights to equal protection, effective assistance of counsel, due process, and protection from cruel and unusual punishment. The district court declined to review these claims, holding that they are all barred by Teague v. Lane, 489 U.S. 288 (1989). Nealy contends that the district court mischaracterized his claims, and that the claims are not Teague-barred because he is not relying on retroactive

7

application of <u>Simmons v. South Carolina</u>.[2]  He notes that the Texas Legislature, after his trial, changed the law to provide that capital murder defendants facing the death penalty can inform jurors about parole eligibility.

The district court's decision that Nealy's parole-eligibility claims are barred by <u>Teague</u> is neither debatable nor wrong. Nealy's creative attempts to avoid the <u>Teague</u> bar are unavailing because, as the district court held, all of his claims are foreclosed by our precedent holding that <u>Teague</u> bars extension of the <u>Simmons</u> rule to a situation where the defendant is eligible for parole.  See <u>Thacker v. Dretke</u>, 396 F.3d 607, 617 n.15 (5th Cir. 2005); <u>Woods v. Cockrell</u>, 307 F.3d 353, 361 (5th Cir. 2002); <u>Tigner v. Cockrell</u>, 264 F.3d 521, 525 (5th Cir. 2001).  At the time Nealy's conviction became final, the state court would not have felt compelled by precedent to conclude that the due process clause, the equal protection clause, and the Sixth and Eighth Amendments required the trial court to instruct the jury on parole eligibility where, under state law, the defendant is eligible for parole.  Thus, the district court did not unreasonably conclude that Nealy seeks the benefit of a new rule barred by <u>Teague</u>.

2

---

[2]The rule in <u>Simmons</u> requires that a jury be informed about the defendant's parole eligibility when the state argues that a defendant represents a future danger to society, and the defendant is legally ineligible for parole.

Nealy requests a COA for his claim that the evidence was insufficient to sustain the State's burden of proving that he would commit criminal acts of violence constituting a future danger to society.

In addition to the evidence presented at the guilt phase, the State presented the following evidence of future dangerousness at the punishment phase: Nealy had a criminal record as a juvenile in the 1970s, including armed offenses; he received a 35-year sentence in 1980 for aggravated robbery (he was sixteen years old, and robbed a woman at gunpoint as she was sitting in her car with her baby in a grocery store parking lot -- he pointed the gun at the woman and her son and told her to get out of the car and leave her purse or he would kill her); and he was convicted again in 1994. At age 33, about one month before the capital murder, Nealy and his nephew held up a pawn shop where Nealy had been a regular customer. After they entered the shop, Nealy grabbed the clerk by the back of the neck and put a gun to the side of her head. His nephew grabbed the clerk's mother and held a gun to her head. Nealy told the clerk that he would kill her if she moved. They took money, two handguns, and a shotgun. The day before the capital murder, Nealy and another man posed as customers in a shoe store robbery. After the owner fitted the two men with new shoes, the owner went to the cash register and Nealy held a handgun close to the owner's head. Nealy and the other man stole about $250 from the cash register and the two pairs of shoes.

9

Nealy accumulated 70 disciplinary reports while in prison. While he was in jail awaiting trial for capital murder, Nealy and two other inmates assaulted another inmate, breaking his jaw. At trial, after the assaulted inmate had testified, Nealy threatened him and shouted obscenities at him.

The Texas Court of Criminal Appeals found this evidence sufficient to support the jury's affirmative answer to the special punishment issue on future dangerousness. The district court noted that the Court of Criminal Appeals used the correct standard of review and concluded that Nealy had not shown by clear and convincing evidence that any of the state court's factual determinations were incorrect.

Nealy contends that, although he had a history of robberies, the previous robberies had not been violent; there was nothing particularly brutal about the instant offense; he could have fired the shotgun after being surprised; the State did not offer psychiatric evidence that he would be a future danger to society; and the extraneous offense evidence from his time in prison was minimal.

Nealy is not entitled to a COA for this claim because reasonable jurists would not find debatable the district court's conclusion that the state court's decision was not an unreasonable determination of the facts or an unreasonable application of clearly established federal law.

III

10

For the foregoing reasons, Nealy's request for a COA is GRANTED, in part, and DENIED, in part.