United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 24, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-70027

_____

CHARLES ANTHONY NEALY,

Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, CORRECTIONAL
INSTITUTIONS DIVISION,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas
USDC No. 3:01-CV-02274

_____

Before JOLLY, HIGGINBOTHAM, and WIENER, Circuit Judges.

PER CURIAM:[1]

Charles Anthony Nealy ("Nealy") was convicted of capital murder and sentenced to death for the 1997 murder of Jiten Bhakta ("Jiten") during an armed robbery of the convenience store owned by Jiten. This court granted a certificate of appealability ("COA") to appeal the district court's denial of habeas relief on Nealy's claim that the evidence is insufficient to support the verdict of guilt. We AFFIRM.

---

[1] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

Nealy's conviction and sentence were affirmed on direct appeal. Nealy v. State, No. 73,267 (Tex. Crim. App. September 13, 2000) (unpublished), cert. denied, 531 U.S. 1160 (2001). In October 2001, the Texas Court of Criminal Appeals adopted the trial court's recommendation that Nealy's state habeas application be denied. Ex parte Nealy, No. 50,361-0-1 (Tex. Crim. App. October 24, 2001) (unpublished).

The district court adopted the magistrate judge's recommendation and denied Nealy's petition for federal habeas relief, as well as his application for a COA. Nealy requested a COA from this court to appeal the denial of relief as to three claims. Based on our "threshold inquiry", consisting of "an overview of the claims in the habeas petition and a general assessment of their merits," Miller-El v. Cockrell, 537 U.S. 322, 327, 336 (2003), this court granted a COA for only one of the three claims: whether the evidence is sufficient to support the jury's verdict of guilt.

The parties filed supplemental briefs on the merits of the claim for which a COA was granted, and this court heard oral arguments of counsel. Having considered the arguments of counsel and based on our review of the record of the state court trial, we conclude that the state court's decision is not unreasonable and, therefore, we AFFIRM the district court's denial of federal habeas relief, for the reasons that follow.

2

II

Nealy is not entitled to federal habeas relief on his claim of insufficient evidence unless the state court's adjudication of this claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The state court's factual determinations "shall be presumed to be correct", and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Nealy argues that the state court's decision was based on an unreasonable determination of the facts in the light of the evidence presented at trial.

A claim of insufficient evidence is reviewed under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 318 (1979): whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." With respect to Nealy's case, the prosecution was required to prove beyond a reasonable doubt that Nealy intentionally caused the death of Jiten Bhakta during the course of a robbery. Nealy

3

contends that no rational trier of fact could have found the essential elements of the offense of capital murder beyond a reasonable doubt, because the eyewitness's identification was tainted by conflicting testimony and his lack of memory about whether he had previously identified Nealy, and because the remaining testimony presented by the prosecution did not establish that Nealy caused Jiten Bhakta's death.

The following evidence was presented at trial. The State's first witness was Memphis Nealy ("Memphis"). He testified that between 5:00 and 7:00 p.m. on the evening of the robbery, he was riding with Nealy on Central Expressway in Dallas. When they passed the Expressway Mart convenience store, Memphis said that Nealy stated, "I'm going to come back and get 'em." Nealy did not want Memphis to participate in their return to the convenience store because Memphis did not have a criminal record.

Memphis testified that, within 24 hours, he saw a television news report about the robbery and murders at the Expressway Mart. On direct examination, he testified that he saw a "little bit" of the videotape from the store on television;[2] that he saw Nealy and Reginald Mitchell in the videotape; and that he later viewed a videotape of the offense and observed Nealy, wearing a dark hat and carrying a shotgun and a briefcase.

---

[2]The record on appeal was supplemented with a copy of the videotape.

4

On cross-examination, Memphis testified that the police showed him the videotape of the offense; that only a small portion of the videotape was shown on the television news; that he could not tell who was depicted on the tape when he first viewed it; and that, after the police told him that Nealy was shown on the videotape, he was able to recognize and identify Nealy and Claude Nealy ("Claude" -- Nealy's nephew and Memphis's brother).

On redirect examination, Memphis testified that the person depicted on the videotape with the dark hat and shotgun is Nealy, and that the person with the light hat and handgun is his little brother, Claude.

Satishbhi (Sam) Bhakta ("Bhakta") testified that his brother, Jiten Bhakta, owned the Expressway Mart. On August 20, 1997, about 8:20 p.m., Bhakta was helping at the store with another employee, Vijay Patel, while Jiten was in the office taking a nap. Two men, one armed with a shotgun and the other with a pistol, entered the store. The men ordered Patel and Bhakta to lie down on the floor. The man with the shotgun went into the office. Bhakta heard Jiten call out and then heard the shotgun discharge. The medical examiner testified that Jiten died from a shotgun wound to his chest that "pulpified" his heart. Bhakta testified that the man with the pistol shot Patel in the head and that Patel died a few days later.

Bhakta testified that the man with the shotgun came out of the office with a briefcase (containing $4,000) and said, "I got the

man in the office." The man with the pistol replied, "I got one over here, too." The man with the pistol ordered Bhakta to open the cash register, and the man with the shotgun took money from the register and put it in his pocket. Both of the robbers took wine and beer before leaving the store. At trial, Bhakta identified Nealy as the man with the shotgun.

On direct examination, Bhakta testified first that the man with the shotgun had on a light-colored hat, but immediately thereafter he testified that the man with the shotgun was wearing a dark-colored hat, and that the man with the pistol was wearing a lighter-colored hat.

Four video cameras in the store recorded the robbery. The videotape was played for the jury during Bhakta's testimony. Although the tape was of poor quality, it showed a man with a light-colored hat, and a man wearing a dark hat, carrying a shotgun. The tape did not record either of the murders, but it recorded the two men stealing money from the cash register.

On cross-examination, Bhakta testified that the man with the shotgun was wearing a white hat, and that the man with the pistol was wearing a dark hat. He stated that the man with the pistol and darker hat was short, balding, had a gold tooth with a star, and was wearing a white t-shirt and dark-colored jeans. He stated that the man with the shotgun was wearing a lighter-colored hat, a white t-shirt, and jeans.

6

On redirect examination, Bhakta testified that the man with the shotgun was wearing the dark-colored hat. He identified Nealy in court as the man who had the shotgun.

On recross-examination, Bhakta testified that he identified the man carrying the shotgun from a photographic line-up, but that he did not remember if that was a picture of Nealy. He testified further that he also identified and signed a photograph of the person who was carrying the pistol.

Reginald Mitchell, a co-defendant, testified that on the night of the robbery, he joined Claude and Nealy in Nealy's car and went to the Expressway Mart. He stated that Nealy was wearing a dark hat and that Claude was wearing a light hat. Mitchell stated that Claude and Nealy entered the store, and that Nealy had a shotgun, although he did not see it. He testified that Claude had a .38 or .32 pistol. Mitchell testified that he first heard a shotgun blast and then small-arms fire. Nealy and Claude came out of the store and got into the car. Mitchell testified that Nealy said, "This is the way the Nealys do it." When they got back to Nealy's house, Nealy said that they committed the crime because "the bitches wouldn't sell him no Blackie mounds" (referring to a type of cigar). Mitchell testified that Nealy threatened to kill him if he told anyone about the crime. The prosecutor showed the videotape to Mitchell and Mitchell identified Nealy as the person with the shotgun depicted on the videotape. On cross-examination, Mitchell

7

admitted that if he did not already know Nealy, he would not have been able to recognize Nealy on the videotape.

Nealy contends that Bhakta's identification is tainted and unreliable, because Bhakta could only identify the shotgun assailant by clothing, he knew that the district attorney suspected that Nealy was the man with the shotgun, and he was mistaken until after he had viewed the videotape. Furthermore, Bhakta testified that he had identified this robber in a photographic line-up, but did not know if he had identified Nealy. Nealy asserts that Memphis's testimony does not prove capital murder, because Memphis could not identify anyone until after the police told him that Nealy and Claude were depicted on the videotape of the offense. Finally, Nealy argues that the videotape is of no aid to the State's case because Reginald Mitchell, who knew all of the parties, admitted that anyone who did not know Nealy could not have identified him from viewing the tape.

On direct appeal, the Texas Court of Criminal Appeals rejected this claim, stating:

> Nealy argues that the State's eyewitnesses gave conflicting testimony and that the surveillance video was of insufficient quality to discern the perpetrator's facial features. He contends, therefore, that the evidence does not preclude the possibility that someone other than Nealy, such as Claude, shot the deceased.
>
> ....
>
> Mitchell, who was riding in the car with Nealy and Claude, saw Nealy wearing a dark hat and

8

carrying a shotgun. The video shows a man wearing a dark hat and carrying a shotgun. The eyewitness to the offense identified Nealy as the man with the shotgun. The pathologist testified that Jiten Bhakta was shot at close range with a shotgun. Viewing this evidence in the light most favorable to the verdict, we hold that the jury could have found beyond a reasonable doubt that Nealy, as opposed to Claude, killed Jiten Bhakta.

In rejecting Nealy's federal habeas claim, the district court held that Nealy had failed to show that any of the state court's findings were incorrect by clear and convincing evidence or that its ultimate resolution of this claim was unreasonable. The district court observed that: (1) three witnesses identified Nealy as the person carrying the shotgun into the store; (2) Bhakta testified that he saw the person with the shotgun go into the office where his brother was resting, heard his brother yell, and saw the person with the shotgun come out of the office with a briefcase, stating, "I got the man in the office"; and (3) Bhakta identified Nealy in court as this same man.

Nealy argues that the conflicts in the testimony in this case are so fundamental that the State's burden to prove beyond a reasonable doubt that he killed Jiten Bhakta cannot be satisfied by the jury's ability to resolve such conflicts. He points out that Bhakta originally stated that his brother's killer had worn a dark hat (which would have corroborated Reginald Mitchell's testimony), but on cross-examination changed his testimony to assert that the shotgun assailant had worn a light-colored hat.

9

Thus, Nealy asserts that Bhakta confused the two assailants, and his identification problem was cleared up only after he had viewed the videotape of the offense. Nealy points out that Bhakta also asserted that he had identified the shotgun assailant in a previous photographic line-up, but he could not remember if he had identified Nealy as that assailant.

All of the arguments regarding the conflicting testimony that Nealy now makes in support of his claim for habeas relief were pointed out to the jury in defense counsel's closing argument. It is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Accordingly, a reviewing court should "not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). The Texas Court of Criminal Appeals's decision that there was sufficient evidence that Nealy shot Jiten Bhakta with a shotgun during the course of a robbery to support his conviction for capital murder did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts in the light of the evidence presented as trial.

III

The Texas Court of Criminal Appeals's determination that the evidence, viewed in the light most favorable to the verdict, was

10

sufficient to allow a rational juror to find find beyond a reasonable doubt that Nealy, as opposed to Claude, killed Jiten Bhakta, is not objectively unreasonable.  Therefore, the judgment of the district court denying Nealy's federal habeas petition is

AFFIRMED.

11