United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 20, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 07-10311
_____

In Re:  CHARLES ANTHONY NEALY,

Movant.

_____

Motion for an order authorizing
the United States District Court for the
Northern District of Texas to consider
a successive 28 U.S.C. § 2254 application

_____

Before JOLLY, HIGGINBOTHAM, and WIENER, Circuit Judges.

PER CURIAM:[*]

On Friday, March 16, 2007, Texas death row inmate Charles Anthony Nealy, who is scheduled to be executed on March 20, 2007, applied to this court for authorization to file a successive application for a writ of habeas corpus in the district court.  He seeks authorization to file two claims in a successive federal habeas corpus petition.  The claims are (1) that he was denied due process of law under the Fourteenth Amendment because the State suppressed exculpatory evidence and knowingly relied on perjured testimony to convict him; and (2) that his conviction is constitutionally unreliable and therefore violates the Eighth Amendment's requirement that capital proceedings adhere to a

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

heightened degree of reliability, and the Fourteenth Amendment's right to due process.

Nealy claims that unless this court intervenes, the State of Texas will execute an innocent man. We note, however, that he does not dispute that he was in the convenience store at the time the robbery and murders occurred. Indeed, in a statement that the state court found to have been voluntarily given, although it was not admitted into evidence at trial, Nealy admitted that he carried the shotgun, but asserted that the shooting was accidental. Therefore, his claim is not that he is actually innocent of murder. Instead, his "actual innocence" claim is that the prosecution failed to prove beyond a reasonable doubt that he personally shot and killed Jiten Bhakta with a shotgun during the course of robbing Jiten Bhakta's convenience store.

## I.

Nealy was convicted of capital murder and sentenced to death for the 1997 murder of Jiten Bhakta during an armed robbery of the convenience store owned by Jiten Bhakta. His conviction and sentence were affirmed on direct appeal. Nealy v. State, No. 73,267 (Tex. Crim. App. September 13, 2000) (unpublished), cert. denied, 531 U.S. 1160 (2001). In October 2001, the Texas Court of Criminal Appeals adopted the trial court's recommendation that Nealy's state habeas application be denied. Ex parte Nealy, No. 50,361-0-1 (Tex. Crim. App. October 24, 2001) (unpublished). Among the numerous claims raised in his first state habeas petition was

2

the claim that the State failed to disclose a plea bargain agreement made in exchange for Reginald Mitchell's trial testimony and thereby violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963).

In his federal habeas petition filed in October 2002, Nealy asserted three claims for relief: (1) that the evidence was insufficient to prove beyond a reasonable doubt the essential elements of the offense of capital murder; (2) that the trial court's failure to allow him to inform the jury of his parole eligibility if the death penalty were not assessed violated his constitutional rights to equal protection, effective assistance of counsel, due process, and protection from cruel and unusual punishment; and (3) that the evidence was insufficient to sustain the State's burden of proving that he would commit criminal acts of violence constituting a future danger to society. The district court denied relief and denied Nealy's request for a certificate of appealability ("COA"). Based on our "threshold inquiry", consisting of "an overview of the claims in the habeas petition and a general assessment of their merits," Miller-El v. Cockrell, 537 U.S. 322, 327, 336 (2003), we granted a COA for the claim of insufficient evidence to support the jury's verdict of guilt, and denied a COA for the other two claims. Nealy v. Dretke, No. 05-70027 (5th Cir. March 27, 2006) (unpublished). Following supplemental briefing on the merits and oral argument, we affirmed the district court's denial of federal habeas relief on the

3

insufficient evidence claim. Nealy v. Dretke, No. 05-70027 (5th Cir. May 24, 2006) (unpublished), cert. denied, 127 S.Ct. 501 (2006).

In his first federal habeas petition, Nealy argued that the evidence was insufficient to convict him of causing the death of Jiten Bhakta during the course of a robbery, because the eyewitness's identification was tainted by conflicting testimony and his lack of memory about whether he had previously identified Nealy, and because the remaining testimony presented by the prosecution did not establish that Nealy caused Jiten Bhakta's death. In our opinion affirming the denial of federal habeas relief on this claim, we described the evidence presented at trial as follows:

> The State's first witness was [Nealy's nephew,] Memphis Nealy ("Memphis"). He testified that between 5:00 and 7:00 p.m. on the evening of the robbery, he was riding with Nealy on Central Expressway in Dallas. When they passed the Expressway Mart convenience store, Memphis said that Nealy stated, "I'm going to come back and get 'em." Nealy did not want Memphis to participate in their return to the convenience store because Memphis did not have a criminal record.
>
> Memphis testified that, within 24 hours, he saw a television news report about the robbery and murders at the Expressway Mart. On direct examination, he testified that he saw a "little bit" of the videotape from the store on television; that he saw Nealy and Reginald Mitchell in the videotape; and that he later viewed a videotape of the offense and observed Nealy, wearing a dark hat and carrying a shotgun and a briefcase.

4

On cross-examination, Memphis testified that the police showed him the videotape of the offense; that only a small portion of the videotape was shown on the television news; that he could not tell who was depicted on the tape when he first viewed it; and that, after the police told him that Nealy was shown on the videotape, he was able to recognize and identify Nealy and Claude Nealy ("Claude" -- Nealy's nephew and Memphis's brother).

On redirect examination, Memphis testified that the person depicted on the videotape with the dark hat and shotgun is Nealy, and that the person with the light hat and handgun is his little brother, Claude.

Satishbhi (Sam) Bhakta ("Bhakta") testified that his brother, Jiten Bhakta, owned the Expressway Mart. On August 20, 1997, about 8:20 p.m., Bhakta was helping at the store with another employee, Vijay Patel, while Jiten was in the office taking a nap. Two men, one armed with a shotgun and the other with a pistol, entered the store. The men ordered Patel and Bhakta to lie down on the floor. The man with the shotgun went into the office. Bhakta heard Jiten call out and then heard the shotgun discharge. The medical examiner testified that Jiten died from a shotgun wound to his chest that "pulpified" his heart. Bhakta testified that the man with the pistol shot Patel in the head and that Patel died a few days later.

Bhakta testified that the man with the shotgun came out of the office with a briefcase (containing $4,000) and said, "I got the man in the office." The man with the pistol replied, "I got one over here, too." The man with the pistol ordered Bhakta to open the cash register, and the man with the shotgun took the money from the register and put it in his pocket. Both of the robbers took wine and beer before leaving the store. At trial, Bhakta identified Nealy as the man with the shotgun.

5

On direct examination, Bhakta testified first that the man with the shotgun had on a light-colored hat, but immediately thereafter he testified that the man with the shotgun was wearing a dark-colored hat, and that the man with the pistol was wearing a lighter-colored hat.

Four video cameras in the store recorded the robbery. The videotape was played for the jury during Bhakta's testimony. Although the tape was of poor quality, it showed a man with a light-colored hat, and a man wearing a dark hat, carrying a shotgun. The tape did not record either of the murders, but it recorded the two men stealing money from the cash register.

On cross-examination, Bhakta testified that the man with the shotgun was wearing a white hat, and that the man with the pistol was wearing a dark hat. He stated that the man with the pistol and darker hat was short, balding, had a gold tooth with a star, and was wearing a white t-shirt and dark-colored jeans. He stated that the man with the shotgun was wearing a lighter-colored hat, a white t-shirt, and jeans.

On redirect examination, Bhakta testified that the man with the shotgun was wearing the dark-colored hat. He identified Nealy in court as the man who had the shotgun.

On recross-examination, Bhakta testified that he identified the man carrying the shotgun from a photographic line-up, but that he did not remember if that was a picture of Nealy. He testified further that he also identified and signed a photograph of the person who was carrying the pistol.

Reginald Mitchell, a co-defendant, testified that on the night of the robbery, he joined Claude and Nealy in Nealy's car and went to the Expressway Mart. He stated that Nealy was wearing a dark hat and that Claude was wearing a light hat. Mitchell stated that Claude and Nealy entered the store, and that

6

Nealy had a shotgun, although he did not see it. He testified that Claude had a .38 or .32 pistol. Mitchell testified that he first heard a shotgun blast and then small-arms fire. Nealy and Claude came out of the store and got into the car. Mitchell testified that Nealy said, "This is the way the Nealys do it." When they got back to Nealy's house, Nealy said that they committed the crime because "the bitches wouldn't sell him no Blackie mounds" (referring to a type of cigar). Mitchell testified that Nealy threatened to kill him if he told anyone about the crime. The prosecutor showed the videotape to Mitchell and Mitchell identified Nealy as the person with the shotgun depicted on the videotape. On cross-examination, Mitchell admitted that if he did not already know Nealy, he would not have been able to recognize Nealy on the videotape.

We noted that Nealy's arguments regarding conflicts in the testimony were pointed out to the jury by defense counsel in closing argument, and that it was the jury's prerogative to resolve those conflicts. We therefore concluded that the state court's decision denying relief on this claim did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts in the light of the evidence presented at trial.

In October 2006, two investigators from the Dallas County District Attorney's office questioned Nealy's nephew, Memphis Nealy, about his trial testimony.[**] Memphis told the investigators

_____

[**]Nealy's motion is somewhat misleading because he omits relevant information concerning the reason the District Attorney's office contacted Memphis. According to the February 7, 2007, opinion of the Texas Court of Criminal Appeals, Nealy and his family attempted to pressure Memphis to recant his trial

7

that he had been harassed by one of the prosecutors in 1997. At a hearing convened by the District Attorney's office on October 11, 2006, Memphis testified that portions of his testimony at Nealy's capital murder trial in 1998 were false and that he was coerced by prosecutor George West into testifying falsely at the trial. Memphis testified that he lied at trial when he stated that Nealy told him on the night of the murders that he was going to "come back and get 'em." He testified further that he never independently identified Nealy from the videotape as the man with the shotgun. Memphis explained that he testified falsely at trial because West threatened him with capital murder charges if he did not cooperate, and he believed that his life was threatened and that he had no choice but to cooperate. Memphis, who was 17 years old at the time of the murders, stated that he was only able to come forward now, nine years later, and tell the truth because he was older and felt like he had control over his life.

On November 9, 2006, Nealy filed a subsequent application for state habeas relief, raising claims of actual innocence and

identification testimony. When the District Attorney's office discovered the plan, investigators contacted Memphis. In its response in opposition to Nealy's motion to file a successive habeas application, the State offers further details. According to the State, a posting on a website for Nealy charged that the police had "blackmailed" Memphis to testify. Through the use of its subpoena power, the Dallas County District Attorney's Office learned of a letter that Nealy wrote to his sister on August 20, 2006, and a subsequent three-way telephone call between Nealy, his sister, and Memphis, in which Nealy asked his sister to find Memphis and bring Memphis to the prison to visit him.

8

prosecutorial misconduct. The Texas Court of Criminal Appeals dismissed the actual innocence claim and remanded the claim of prosecutorial misconduct to the trial court for resolution.

The state trial court conducted an evidentiary hearing on December 13, 2006. At that hearing, Memphis testified that, if the investigators from the District Attorney's office had not contacted him, he never would have come forward and told the truth. In its response to Nealy's motion, the State asserts that at that hearing, Memphis described a detective, Anthony Winn, rather than prosecutor West, as his alleged harasser. The State notes that the trial court found that Memphis was not a credible witness at the "recantation" hearings, that his allegations of prosecutorial misconduct and false trial testimony were untrue and were fabricated to obtain a stay of execution, and that his trial testimony was not false, coerced, or fabricated.

In an investigation conducted as a result of Memphis's recantation, defense investigators allegedly discovered that a signature on a statement purportedly given by co-defendant Claude Nealy ("Claude"), secured in connection with the prosecution of Nealy, appears to be fabricated. In his purported statement to the police on September 18, 1997, Claude admitted his involvement in the robbery and stated that Charles Nealy shot and killed both of the victims at the convenience store. On December 18, 2006, Claude signed an affidavit in which he stated that he did not make or sign any statement for detectives. Nealy asserts that Claude's

9

signature on this affidavit does not resemble the signature on the September 1997 statement. He therefore asserts that the September 1997 statement "appears to be a fabrication." The State points out that Claude's statement was never introduced into evidence at Nealy's trial, and thus was not used to convict Nealy. In any event, the State notes that Claude's December 2006 affidavit does not dispute the facts of the crime recited in the September 1997 statement.

Nealy also claims that on December 20, 2006, Reginald Mitchell told a defense investigating attorney that he lied at Nealy's capital murder trial when he testified that the State had not made any deal with him in exchange for testifying against Nealy. Because of logistical difficulties in getting witnesses to Dallas County for the evidentiary hearing, counsel for the parties agreed that the testimony of Reginald Mitchell and Claude Nealy would be provided in affidavit form. Mitchell, however, refused to sign an affidavit because he did not want to become involved in this case and was afraid of getting into trouble. Accordingly, Nealy submitted the affidavit of defense investigating attorney Karen Cunningham, who had spoken with Mitchell on several occasions. In her affidavit, she stated that Mitchell told her that he made an agreement with the prosecution, without the involvement of his trial counsel, to testify against Nealy in exchange for a three-year sentence and a lesser charge.

10

On December 26, 2006, the trial court recommended that relief be denied. The Texas Court of Criminal Appeals adopted the trial court's recommendation and denied relief. Ex Parte Nealy, No. 50, 361-03 (Tex. Crim. App. February 7, 2007) (unpublished). The Court of Criminal Appeals adopted the trial court's finding that Memphis's allegations of prosecutorial misconduct and false trial testimony are untrue and were fabricated to secure a stay of execution. The court noted that Nealy also tried to raise a claim that was not before the trial court -- that Reginald Mitchell had an undisclosed deal with prosecutors. The court dismissed that claim as an abuse of the writ on the ground that it had been rejected when Nealy raised it in his initial state habeas application filed in July 2000.

On March 14, 2007, Nealy filed another application for post-conviction relief in state court. On March 15, 2007, the Texas Court of Criminal Appeals dismissed, as an abuse of the writ, Nealy's claims (1) that the prosecutorial misconduct that he identified in his first subsequent state habeas application also rendered his conviction unreliable, in violation of the Eighth Amendment, and (2) that he is mentally retarded and cannot be executed. Ex parte Nealy, No. WR-50,361-04 (Tex. Crim. App. March 15, 2007) (unpublished).

On February 27, 2007, Nealy's counsel advised this court that he would not be filing anything further on Nealy's behalf. Nevertheless, on Friday, March 16, counsel called and said that

they were going to file a motion for authorization to file a successive federal habeas application. The motion was filed later that afternoon and received by this court after 5:00 p.m. on Friday. This court ordered the State to file a response, and it did so on Monday, March 19.

II.

This court may authorize the filing of a successive petition only if we determine that "the application makes a prima facie showing that the applicant satisfies the requirements" of 28 U.S.C. § 2244(b). 28 U.S.C. § 2244(b)(3)(C). The claims that Nealy seeks to assert were not presented in his previous application for federal habeas relief. Therefore, he must make a prima facie showing that

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B).

"A prima facie showing ... is simply a sufficient showing of possible merit to warrant a fuller [exploration] by the district court." In re Hearn, 418 F.3d 444, 445 (5th Cir. 2005). "If it is 'reasonably likely' that the motion and supporting documents indicate that the application meets the 'stringent' requirements

12

for the filing of a successive petition, then we must grant authorization to file the petition." In re Henderson, 462 F.3d 413, 415 (5th Cir. 2006) (quoting In re Morris, 328 F.3d 739, 740 (5th Cir. 2003)). The state court's findings regarding the credibility of Memphis's recantation, as well as its application of state procedural bars, "are wholly irrelevant to our inquiry as to whether [Nealy] has made a prima facie showing of entitlement to proceed with his federal habeas application, which is an inquiry distinct from the burden that [Nealy] must bear in proving his claim in the district court." In re Wilson, 442 F.3d 872, 878 (5th Cir. 2006).

Nealy contends that the factual predicate of his claims could not have been discovered previously through the exercise of due diligence, because the claims rely on facts discovered for the first time four years after he filed his federal habeas petition in October 2002. He asserts that Memphis Nealy's testimony that the prosecution coerced him into testifying falsely at Nealy's capital murder trial was discovered only because two investigators with the Dallas County District Attorney's office approached Memphis at his workplace and questioned him about the veracity of his trial testimony. Memphis testified that he never would have come forward to tell the truth had he not been contacted by the State's investigators. Nealy asserts that his investigators learned of Reginald Mitchell's false testimony and Claude's fabricated statement only after Memphis recanted his trial testimony. He

13

claims that none of this information could have been discovered previously through the exercise of due diligence because the State actively concealed the information. He contends further that his counsel could not have learned of the deal that existed between the State and Reginald Mitchell, because that deal was never made part of the record.

Nealy asserts that the facts underlying these claims, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the capital murder of Jiten Bhakta. He asserts that, without the false testimony given by Memphis and Mitchell, no reasonable jury would have convicted him solely on the basis of the contradictory, unreliable testimony of the eyewitness, Sam Bhakta.

## III.

Nealy has not made the requisite showing under 28 U.S.C. § 2244(b)(2)(B)(i) to raise his prosecutorial misconduct and Eighth Amendment "unreliable process" claims in a successive habeas application. The evidence he relies on is neither new nor previously undiscoverable. Memphis Nealy, Claude Nealy, and Reginald Mitchell were available for further investigation by the defense before Nealy filed his first federal habeas application in 2002. Memphis's allegedly "false" testimony has been known to Nealy since his trial. Reginald Mitchell's allegedly undisclosed deal with prosecutors has been known by Nealy at least since July

14

2000, when he raised a <u>Brady</u> claim based on the same allegations in his first state habeas application. Had he exercised due diligence, these claims could have been discovered and raised in his first federal habeas application.

Furthermore, Nealy has not made a <u>prima</u> <u>facie</u> showing of prosecutorial misconduct or an Eighth Amendment violation by showing that the facts of his claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of capital murder, as required by 28 U.S.C. § 2244(b)(2)(B)(ii).

The evidence of Nealy's guilt is not undermined by Memphis's recantation of his testimony, and Nealy has not made a <u>prima</u> <u>facie</u> showing that he would have been acquitted if Memphis had not been "coerced" into testifying. Mitchell testified that he and Claude rode in Nealy's car to the Expressway Mart and stopped for gasoline. Mitchell went into the store, paid for the gasoline, and returned to the car to pump the gas. They drove away but returned a few minutes later. Nealy, carrying a shotgun, and Claude, armed with a pistol, entered the store. Mitchell heard a shotgun blast, followed by small-arms fire. Mitchell testified that when Nealy came out of the store, he was carrying a briefcase. Sam Bhakta testified that when the robber armed with the shotgun came out of Jiten's office after shooting Jiten, that individual was carrying Jiten's briefcase. Nealy told Mitchell he committed the crime

15

because the victims would not sell him a cigar.  At trial, after viewing the videotape of the incident, Mitchell identified Nealy as the robber wearing a dark hat and carrying the shotgun, and identified Claude as the robber with the pistol.  Sam Bhakta also identified Nealy as the robber who had the shotgun.  Although there were discrepancies and inconsistencies in Sam Bhakta's testimony, as described in our prior opinion (quoted earlier in this opinion), at trial he identified Nealy as the robber wearing the dark hat and carrying the shotgun.  Contrary to Nealy's assertion that Sam Bhakta's testimony must be disregarded in its entirety because of the inconsistencies, the jury was entitled to consider his testimony and to resolve any issues relating to his credibility.

Nealy has not satisfied his burden to make a prima facie showing that Reginald Mitchell testified falsely that he had not made a deal with the prosecutors for a lesser sentence in exchange for his testimony against Nealy.  The only evidence offered by Nealy in support of this allegation is the hearsay affidavit of one of his investigating attorneys.  Mitchell has never stated under oath that he lied at Nealy's trial.  Furthermore, there is no evidence that Mitchell told the investigating attorney that he was lying when he testified regarding the events of the robbery and murder, and in particular his testimony that Nealy was wearing a dark hat and carrying a shotgun.

In sum, Nealy has failed to make a prima facie showing in both requirements of the statute:  that is, he has failed to show that

16

the evidence presented could not have been previously discovered through the exercise of due diligence and secondly, he has failed to show that even if the claims were proved, that they would be sufficient to change the outcome of the guilty verdict in this case.

IV.

For the foregoing reasons, Nealy's motion for authorization to file a successive federal habeas application is

DENIED.

17