EDITH BROWN CLEMENT, Circuit Judge:
Movant Yokamon Laneal Hearn is a state prisoner on death row in Texas. He moves pursuant to 28 U.S.C. § 2244(b)(2)(A) for an order authorizing the filing and consideration of a second petition for writ of habeas corpus. Hearn’s application is based on the new rule of constitutional law set forth in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). He claims he is ineligible for execution under Atkins because he is mentally retarded. Id.
This Court may allow the filing of a second habeas application “only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.” 28 U.S.C. § 2244(b)(3)(C). Hearn must make a prima facie showing that (1) his claim has not previously been presented in a prior application to this Court, (2) his claim *445 relies on a decision that stated a new, retroactively applicable rule of constitutional law that was previously unavailable to him, and (3) that he is mentally retarded. In re Johnson, 334 F.3d 403, 404 (5th Cir.2003). Texas concedes that Hearn satisfies the first two requirements, that is, his Atkins claim was not previously presented in any prior application to this Court, and Atkins represents a new, retroactively applicable rule of constitutional law that was previously unavailable. The issue before this Court is whether Hearn has made a prima facie showing that he is mentally retarded.
A prima facie showing of mental retardation is “ ‘simply a sufficient showing of possible merit to warrant a fuller [exploration] by the district court.’ ” Id. (quoting In re Morris, 328 F.3d 739, 740 (5th Cir. 2003)). Mental retardation is a disability characterized by three criteria: significant limitation in intellectual functioning, significant limitation in adaptive behavior and functioning, and onset of these limitations before the age of 18. American Association on Mental Retardation (“AAMR”), Mental Retardation: Definition, Classification, and Systems of Supports 1 (10th ed.2002).
Hearn’s motion includes expert reports from Pablo Stewart, M.D., Mary Alice Conroy, Ph.D., and James R. Patton, Ed.D. Dr. Stewart’s report does not address the question of whether Hearn is mentally retarded. Rather, it assesses Hearn for fetal alcohol syndrome (“FAS”). Dr. Stewart concludes that Hearn suffers from FAS and further notes that “[o]ne of the frequently occurring consequences of FAS is mental retardation. Indeed, FAS is the most commonly-identified case of mental retardation.” Dr. Stewart’s report offers an explanation for the cause of Hearn’s alleged mental retardation; it neither diagnoses nor excludes mental retardation.
Dr. Conroy’s psychological evaluation addresses the first prong of the mental retardation diagnosis, that is, it was conducted “in order to obtain an assessment of [Hearn’s] general intellectual functioning.” Dr. Conroy makes no conclusions regarding whether Hearn is mentally retarded; her findings relate only to Hearn’s limitations in intellectual functioning.
The third expert, Dr. Patton, interprets Dr. Conroy’s findings and determines that Hearn has significant limitations in intellectual functioning. Based on testing he administered, Dr. Patton further opines that Hearn has significant limitations in adaptive behavior and functioning. Finally, Dr. Patton determines that the onset of these limitations occurred before Hearn was 18. Dr. Patton concludes: “In summary, it is my professional opinion, based on the materials reviewed, the test results recently obtained, and the interviews with key respondents, that Mr. Hearn meets the criteria of mental retardation, as defined by the American Association of Mental Retardation.”
Texas argues that Dr. Patton’s opinion is facially invalid and cannot constitute a prima facie showing of mental retardation because Dr. Patton is not a licensed psychologist and Hearn presents no proof that Dr. Patton is certified by Texas to diagnose mental retardation. In Dr. Patton’s assessment of mental retardation, he summarized his numerous qualifications and significant experience. Based on these qualifications, we decline to conclude that Dr. Patton is not qualified to assess and diagnose mental retardation for the purposes of Hearn’s prima facie showing.
We reject the dissent’s argument that we cannot consider Dr. Patton’s opinion because he does not meet the Texas Health and Safety Code’s standard for *446 those who may determine mental retardation. This standard, found in Texas’s Persons With Mental Retardation Act (“PMRA”), provides that mental retardation may be diagnosed only by “a physician or psychologist licensed in this state or certified by the [Texas Department of Mental Health and Mental Retardation].” Tex. Health & Safety Code Ann. § 591.003(16) (2005) (enacted before Atkins). This standard, however, has not been made applicable to Atkins proceedings.
The Supreme Court in Atkins left “to the States the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences.” Ex Parte Briseno, 135 S.W.3d 1, 5 (Tex. Crim.App.2004) (quoting Atkins, 536 U.S. at 317, 122 S.Ct. 2242). In Briseno, the Texas Court of Criminal Appeals held that until the Texas legislature provides a statutory definition of mental retardation, it will use the definition of mental retardation promulgated by the AAMR and mirrored by subsection 591.003(13) of the PMRA when addressing Atkins claims. Id. at 8. Neither the AAMR definition nor subsection (13) of the PMRA addresses who is qualified to render an opinion on whether a particular person is mentally retarded. Briseno neither explicitly nor implicitly endorses subsection (16) of the PMRA, upon which the dissent relies to argue for Dr. Patton’s exclusion; indeed, Briseno itself relied upon lay opinion to determine retardation. Id. at 18.
The dissent surmises that the majority is “saying that even if Patton is unqualified under Texas law to testify as an expert, he can state his ‘opinions’ as a lay witness.” The dissent condemns this as an “astonishing notion” that would eviscerate the reasonable restrictions of Federal Rule of Evidence 703. We have no such notion. This criticism evinces a fundamental misunderstanding of both the reasoning in Briseno and the majority’s argument.
Pointing to Briseno’s adoption of the AAMR and § 391.003(13) standards, the dissent concludes that it “follows logically that if the State of Texas, through its highest criminal court, has decided to use its statutory definition of ‘mental retardation’ in Atkins proceedings, it would be a ‘no brainer’ that the statutory definition of who is qualified to opine as to mental retardation would also apply.” This conclusion, however, is belied by Briseno itself. In Briseno, the court observed that
[although experts may offer insightful opinions on the question of whether a particular person meets the psychological diagnostic criteria for mental retardation, the ultimate issue of whether this person is, in fact, mentally retarded for purposes of the Eighth Amendment ban on excessive punishment is one for the finder of fact, based upon all of the evidence and determinations of credibility.
Id. at 9 (emphasis added). The court cata-logued a number of “evidentiary factors” that a finder of fact may consider when determining whether an defendant is mentally retarded, including whether “family, friends, teachers, employers [and] authorities” believed him to be mentally retarded during the developmental stage, whether he responds “coherently, rationally, and on point” to oral or written questions, and whether his “conduct in response to external stimuli” is “rational and appropriate.” Id. at 8.
The court then affirmed the lower court’s determination that the applicant was not mentally retarded. In doing so, the court relied in part on the lay testimony of Texas Department of Criminal Justice officers regarding the applicant’s behavior while in jail. Id. at 18 (“In sum, we conclude that, while there is expert opinion *447 testimony in this record that would support a finding of mental retardation, there is also ample evidence, including expert and lay opinion testimony, as well as written records, to support the trial court’s finding .... ”). If the Texas Court of Criminal Appeals was willing to ground its Atkins determination in part on the testimony of lay witnesses, it could not — as a pure matter of logic — have tacitly adopted the standard in § 591.003(16) as a litmus test for qualification to opine on an applicant’s mental condition.[1]
The purpose of the PMRA is to provide social services to and guarantee rights of persons with mental retardation. § 591.002. The PMRA, by its own terms, is irrelevant to the application of Atkins. For Eighth Amendment purposes, it neither defines mental retardation nor — -more relevantly — establishes who may diagnose mental retardation. Laying aside whether, or how much, Texas may, in implementing Atkins, restrict expert testimony according to the standards of subsection (16) of the PMRA or other standards, there is no indication that it has done so. Reliance on subsection (16) of the PMRA to exclude Dr. Patton’s testimony is therefore misplaced.[2] This Court relies on Dr. Patton’s report for the limited purpose of assessing whether Hearn has made a pri-ma facie case of mental retardation — that is, whether he has raised questions of possible merit which justify further exploration below.[3]
Texas further argues that Dr. Patton’s opinion on adaptive functioning improperly relies upon the Adaptive Behavior Assessment System-Second Edition (“ABAS-II”). Hearn responds that Dr. Patton correctly used and relied upon the ABAS-II in making his determination. We will not address this factual dispute over Dr. Patton’s methods and findings. We hold only that Hearn, through Dr. Patton’s report and its incorporation of the reports of Dr. Stewart and Dr. Conroy, has put forth minimally sufficient evidence to make a prima facie case that he may be a person with mental retardation.
In accordance with the Supreme Court’s mandate in Atkins, because there is sufficient, albeit slight,[4] merit in Hearn’s mo *448 tion to warrant further exploration by the district court, it is hereby ORDERED that Hearn’s motion for permission to file a successive petition for writ of habeas corpus is GRANTED.

. Further evidence that the Briseno court did not adopt subsection (16)'s standard is that it referred broadly to who may assess mental retardation: “Psychologists and other mental health professionals are flexible in their assessment of mental retardation.” Id. at 7 n. 24 (emphasis added).

. Hearn characterizes subsection (16)'s standard for persons qualified to diagnose mental retardation as “myopic” because it allows only Texas licensed or certified physicians or psychologists to diagnose mental retardation. We take no position on the merit of this standard; we merely determine that it has not been made applicable in Atkins proceedings.

. We note that Dr. Patton has offered his opinion on a defendant's mental retardation in a similar case. See Morris v. Dretke, 413 F.3d 484, 490 (5th Cir.2005). Texas argued in Morris that Dr. Patton was an “unlicensed psychologist.” See Texas’s Response in Opposition to Application for Certificate of Ap-pealability at 7. The district court, ruling on Texas's motions to dismiss Morris's amended petition for habeas corpus, did not determine whether Morris had made a sufficient showing of mental retardation or whether it could consider Dr. Patton’s testimony. Rather, it dismissed the petition without prejudice on exhaustion grounds. Morris v. Dretke, No. H-03-2186 (S.D. Tex. filed Dec. 5, 2003). The district court did note, however, that Morris’s amended petition, which included Dr. Patton's affidavits opining that Morris was mentally retarded, was a “much stronger Atkins claim than he presented to the Texas courts.” Id. at *17. This Court agreed that Morris's evidence, which included Dr. Patton's affidavits, was "professional assessment evidence” which "factually bolstered” Morris's Atkins claim. 413 F.3d at 495.

.Dr. Patton's report shows that Hearn barely meets the standard for significant limitations in intellectual functioning. On the AAMR's *448 definition of mental retardation, significant limitations in intellectual functioning amount to performance on an appropriate assessment instrument that is approximately two standard deviations below the mean, taking into account the instrument's standard measurement error. On the Wechsler Adult Intelligence Scale-Third Edition ("WAIS-III''), two standard deviations below the mean would amount to a score of 70. The measurement of error is approximately 5 points, so that a score of 70 represents a range of 65-75. On the WAIS-III administered by Dr. Conroy, Hearn obtained a Full Scale IQ of 74, a Verbal IQ of 73, and Performance IQ of 78. Dr. Patton, taking into account the measurement error for the WAIS-III, concludes that Hearn’s scores "are in the IQ range that can be considered approximately two standard deviations below the mean of 100.”