United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 23, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-40320
_____

In Re:  JAMES LEE HENDERSON,

Movant.

_____

Motion for Authorization to File Successive
Application for Writ of Habeas Corpus
Pursuant to 28 U.S.C. § 2254

_____

Before JOLLY, WIENER, and GARZA, Circuit Judges.

PER CURIAM:

Texas death row inmate James Lee Henderson has applied for our authorization to file a successive application for a writ of habeas corpus in the district court.[1]  He seeks to challenge his death sentence pursuant to the Supreme Court's decision in Atkins v. Virginia, 536 U.S. 304 (2002), which prohibits the execution of mentally retarded criminals.

I

Nearly thirteen years have passed since, during the course of a robbery, Henderson deliberately shot 73-year-old Martha Lennox in the head while she was in the bedroom of her home.  Henderson was convicted of capital murder and sentenced to death in 1994.  His conviction and sentence were affirmed on direct appeal.  In 1997, he filed an application for state habeas relief, which the Texas

_____

[1]Henderson's motion for appointment of counsel is granted.

Court of Criminal Appeals denied in July 1998. He filed a second state habeas application on December 31, 1998. That application was dismissed as an abuse of the writ.

Henderson filed a petition for federal habeas relief in January 1999. The district court conducted an evidentiary hearing in March 2001, and denied relief that September.

On June 20, 2002, while Henderson's appeal to this court was pending, the Supreme Court decided Atkins.

In June 2003, this court denied a certificate of appealability and affirmed the district court's denial of habeas relief. Henderson filed a petition for a writ of certiorari. The Supreme Court denied certiorari on January 26, 2004.

On January 16, 2004, before the petition was denied, Henderson was evaluated by a psychologist, Dr. Susana Rosin. Dr. Rosin did not complete her report until March 19, 2004 and, five days later, Henderson filed another successive state habeas application, raising his claim under Atkins.

On April 21, 2004, the Texas Court of Criminal Appeals issued an order remanding the case to the trial court. The appeals court stated that it had reviewed the application and found that Henderson had presented facts which, if true, might entitle him to relief. On remand, the trial court conducted a hearing and entered findings of fact and conclusions of law, recommending that Henderson's Atkins claim be denied.

On January 25, 2006, the Texas Court of Criminal Appeals denied relief. In a concurring statement, four judges of the court observed that this "case presents a close question on the ultimate factual issue of mental retardation." The statement noted that the court had remanded the case to the trial court "for an evidentiary hearing because [Henderson] had made a prima facie showing of mental retardation."

On March 6, 2006, Henderson filed with this court his motion for authorization to file a successive federal habeas petition.

II

Under AEDPA, this court may authorize the filing of a successive petition only if we determine that "the application makes a prima facie showing that the applicant satisfies the requirements" of 28 U.S.C. § 2244(b). 28 U.S.C. § 2244(b)(3)(C). Thus, Henderson

> must make a prima facie showing that (1) his claim has not previously been presented in a prior application to this Court, (2) his claim relies on a decision that stated a new, retroactively applicable rule of constitutional law that was previously unavailable to him, and (3) that he is mentally retarded.

In Re Hearn, 418 F.3d 444, 444-45 (5th Cir. 2005). The State concedes that Henderson has satisfied the first two requirements -- his Atkins claim has not been presented in a prior habeas application, and Atkins is a new, retroactively applicable rule of constitutional law that was previously unavailable. The disputed

3

issue is whether Henderson has made a prima facie showing that he is mentally retarded.

> A prima facie showing of mental retardation is simply a sufficient showing of possible merit to warrant a fuller [exploration] by the district court. Mental retardation is a disability characterized by three criteria: significant limitation in intellectual functioning, significant limitation in adaptive behavior and functioning, and onset of these limitations before the age of 18.

Hearn, 418 F.3d at 445 (internal quotations and citations omitted). If it is "reasonably likely" that the motion and supporting documents indicate that the application meets the "stringent" requirements for the filing of a successive petition, then we must grant authorization to file the petition. In re Morris, 328 F.3d 739, 740 (5th Cir. 2003). "[T]he state court findings concerning the Atkins claim are wholly irrelevant to our inquiry as to whether [Henderson] has made a prima facie showing of entitlement to proceed with his federal habeas application, which is an inquiry distinct from the burden that [Henderson] must bear in proving his claim in the district court." In re Wilson, 442 F.3d 872, 878 (5th Cir. 2006).

A

Henderson argues that he has shown (1) intellectual testing fixing his IQ at 66, which demonstrates subaverage intellectual functioning; (2) significant limitations in several adaptive skills; and (3) onset before age 18. In support of his motion, Henderson presented Dr. Rosin's affidavit and excerpts from the

4

transcript of the state court's evidentiary hearing on his <u>Atkins</u> claim.

According to Dr. Rosin, Henderson's Full Scale IQ score is 66, which is within the Mild Mentally Retarded range. She concluded that this IQ score is consistent with the results from other diagnostic tests that she administered, including the Trail Making Test, which indicated that Henderson is in the mildly impaired range, and the Wide Range Achievement Test-3, which showed a seventh grade equivalent in reading and spelling, and a fifth grade equivalent for arithmetic. At the hearing, Dr. Rosin testified that, according to records dating to April 1992, when Henderson was 19 years old, he had a grade equivalent reading level of 4.9 and a mathematics grade equivalent of 4.4.

Three lay witnesses testified for Henderson at the state hearing. Reverend Milton Glass, who taught at Henderson's elementary school, testified that Henderson was in special education, that his grooming and dress were not age-appropriate, and that he had difficulty with social interaction, that he had low self-esteem, and that he was very gullible. Two of Henderson's classmates testified that Henderson's hygiene was not age-appropriate, that he often came to school smelling like urine, that his verbal skills were delayed, and that he had low self-esteem and was very gullible. Based on Henderson's scores on the Vineland Adaptive Behavior Scales, designed to assess communication, personal and social sufficiency, Dr. Rosin concluded that

5

Henderson exhibited a "low" adaptive level of functioning, with age equivalent scores ranging between seven years-six months and eleven years. It was Dr. Rosin's expert opinion that Henderson has adaptive behavior deficits in self-direction, work skills, safety and academic skills.[2]

Finally, Dr. Rosin testified that, because there was no evidence that Henderson suffered from any accident or illness after age 18 that would account for a recent drop in his IQ scores, it was her opinion that he has functioned within the mildly mentally retarded range since he was very young. She also testified that his adaptive behavior deficits existed before he was 18 years old.

B

The State argues that Henderson has failed to make a prima facie case of subaverage intellectual functioning.[3] According to the State, Steve Gilliland, a licensed professional counselor for the Texas Department of Criminal Justice, testified at the state evidentiary hearing that he did an intake assessment of Henderson in 1994, and that Henderson scored an 83 on the short form of the Wechsler Adult Intelligence Scale - Revised ("WAIS-R").

---

[2]According to Dr. Rosin, a diagnosis of mental retardation requires the demonstration of adaptive deficits in at least two of the following areas: communication, self-care, home living, social/interpersonal, use of community resources, self-direction, work skills, functional academic skills, health and safety.

[3]Neither party furnished this court with a complete transcript of the state evidentiary hearing. Henderson's motion includes selected excerpts. The State's response describes testimony that it presented, but does not include excerpts of the transcript.

6

The State also points to the testimony of Dr. Michael Gillhausen, a licensed psychologist, who testified that the reliability of the short form WAIS-R is 94%, which would allow a reliable conclusion that Henderson's IQ would fall within the range from 76-90. Dr. Gillhausen noted that Henderson had scored at the seventh grade level on achievement tests given by Dr. Rosin, but that in his experience, the mildly mentally retarded usually cannot score above the sixth grade level.

According to the State, the state trial court found that Dr. Rosin's assessment was less credible than those of Dr. Gillhausen and Gilliland, because Dr. Rosin's tests were administered after Henderson knew that his life would be spared if he were mentally retarded.

The State also contends that Henderson has not made a prima facie showing of significant deficits in adaptive functioning. According to the State, Dr. Gillhausen testified that, based on his review of grievance forms that Henderson prepared while he was in prison, Henderson had a very good vocabulary and an ability to form concepts and comprehend procedures and rules. The State also introduced prison records reflecting that Henderson had ordered paperback and hardcover books, and had copies of Tom Clancy and Stephen King novels in his cell. The State asserts that Creea Impson, Henderson's juvenile intake probation and parole officer, testified that during the time she supervised him prior to the capital murder, Henderson was not a follower, was always aware of

7

what he was doing and why he did it, and wrote rational letters of restitution to his crime victims.

Finally, the State asserts that Henderson failed to make a prima facie showing that his alleged mental retardation onset before age 18.

As we noted earlier, neither party presented us with a complete transcript of the testimony presented at the state court hearing. Henderson offered selected excerpts supporting his claim of retardation, but the State did not provide any evidence to support the assertions in its brief. Based on the limited materials available to us, we conclude that Henderson has made a prima facie showing of mental retardation. We therefore grant his motion for authorization to file a successive habeas petition.

### III

We note that, unless the doctrine of equitable tolling applies, Henderson's successive petition is time-barred. See 28 U.S.C. § 2244(d)(1). Although the parties have briefed that question, we have concluded that, under the circumstances of this case, it is premature for us to address it. We therefore leave it for the district court to decide whether Henderson's case presents the "rare and exceptional circumstances" that would entitle him to the benefit of equitable tolling. See In re Hearn, 389 F.3d 122 (5th Cir. 2004); In re Wilson, 442 F.3d 872, 878 (5th Cir. 2006); In re Salazar, 443 F.3d 430 (5th Cir. 2006).

### IV

For the foregoing reasons, Henderson's motion for authorization to file a successive federal habeas petition is

GRANTED.