United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 2, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 06-20806

In re MILTON WUZAEL MATHIS,

Movant.

Order on Motion for Leave to File Successive Writ
in the United States District Court
for the Southern District of Texas

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Milton Mathis seeks permission to file a successive habeas claim in federal district court based upon *Atkins v. Virginia*, 536 U.S. 304 (2002). For the following reasons, we grant him permission to file a successive federal habeas application.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 15, 1998, Chris Lentsch heard gunshots in his home and turned to see Mathis exiting Travis Brown's room with a gun in his hand. Mathis claimed that Brown had just shot himself. Lentsch told Mathis to put the gun down, but Mathis shot fifteen-year-old Melanie Almaguer in the head, leaving her alive but paralyzed from the neck down. Mathis then shot Daniel

Hibbard in the head, causing his death. Mathis finally pointed the gun at Esmerelda Lester, whereupon he discovered he was out of bullets. Mathis thereafter rummaged through the house, set fire to Brown's room, threatened Lester and Lentsch, and finally left in Brown's car. Mathis was later apprehended and indicted.

Mathis was convicted and sentenced to death. The Court of Criminal Appeals affirmed his conviction and sentence on direct appeal on February 13, 2002. Mathis's first state petition for writ of habeas was denied on April 3, 2002. Mathis filed his first federal habeas petition on April 3, 2003, and it was denied on February 2, 2004. While his federal habeas petition was pending, Mathis filed a successive state habeas claim on June 20, 2003, raising his *Atkins* claim for the first time. On March 3, 2004, the Court of Criminal Appeals dismissed Mathis's *Atkins* application because he had not shown that the federal court stayed its proceedings as required by *Ex Parte Soffar*, 143 S.W.3d 804 (Tex. Crim. App. 2004).

On February 17, 2004, Mathis filed a motion for reconsideration with the federal district court and at the same time requested that the district court hold the case in abeyance pending the United States Supreme Court's decision in *Atkins v. Virginia*. The district court denied the motion on March 11, 2004, and Mathis appealed on April 8, 2004, seeking a COA, which the lower court denied.

Mathis then applied for a COA from this court on August 10, 2004, seeking a stay of the federal proceedings so he could return to state court and raise his *Atkins* claim. This court denied both Mathis's application for a COA and his motion for a stay of execution on March 11, 2005. Mathis then filed a successive habeas application in state court on April 15, 2005, also seeking a stay of execution. The Court of Criminal Appeals granted the stay, and the case was remanded to the trial court for consideration of Mathis's *Atkins* claim.

2

The state trial court held an evidentiary hearing in September of 2005, and on January 5, 2006, recommended that Mathis be denied habeas relief. The Court of Criminal Appeals adopted the trial court's findings and conclusions and denied relief on September 20, 2006. Mathis now seeks to file a successive federal habeas petition raising his *Atkins* claim.

## II. DISCUSSION

"The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the applicant satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C). Because Mathis is asserting an *Atkins* claim, we must consider three elements of his prima facie case: "1) [whether] the claim[ ] to be presented in the proposed successive habeas corpus application [has] not previously been presented in any prior application to this Court; 2) [whether] the claim to be presented in the proposed successive habeas application relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable . . . 3) and [whether] the applicant should be categorized as 'mentally retarded' as defined in [*Atkins* and *Penry v. Lynaugh*, 492 U.S. 302 (1989)]." *In re Morris*, 328 F.3d 739, 740-41 (5th Cir. 2003) (internal citations omitted). The Director concedes that Mathis's claim satisfies the first two elements; the only issue to be determined by this court is whether or not Mathis has presented a prima facie case that he is mentally retarded.

A prima facie showing of mental retardation is made out in this context if Mathis makes "a sufficient showing of possible merit to warrant a fuller exploration by the district court. . . . If . . . it appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition, we shall grant the application." *Bennett v. United States*, 119 F.3d

3

468, 469-70 (7th Cir. 1997); *see Reyes-Requena v. United States*, 243 F.3d 893, 898-99 (5th Cir. 2001) (quoting *Bennett*). "[T]he state court findings concerning the *Atkins* claim are wholly irrelevant to our inquiry as to whether [Mathis] has made a prima facie showing of entitlement to *proceed* with his federal habeas application, which is an inquiry distinct from the burden that [Mathis] must bear in proving his claim in the district court." *In re Wilson*, 442 F.3d 872, 878 (5th Cir. 2006) (emphasis in original). If we grant the motion, the district court must conduct its own independent review of whether or not Mathis has met the requirements of § 2244(b). *Morris*, 328 F.3d at 741 (quoting *Reyes-Requena*, 243 F.3d at 899). The district court is, therefore, the "second gate through which the petitioner must pass before the merits of his or her motion are heard." *Id.* (internal citations and quotations omitted).

Whether or not Mathis has made a prima facie showing of mental retardation must be judged by the American Association on Mental Retardation's ("AAMR") definition and associated factors. *See* AM. ASS'N ON MENTAL RETARDATION, MENTAL RETARDATION: DEFINITION, CLASSIFICATION, AND SYSTEMS OF SUPPORTS 5 (9th ed. 1992); *see also Ex Parte Briseno*, 135 S.W.3d 1 (Tex. 2004) (noting additional factors for consideration). "Mental retardation is a disability characterized by three criteria: significant limitation in intellectual functioning, significant limitation in adaptive behavior and functioning, and onset of these limitations before the age of 18." *In re Hearn*, 418 F.3d 444, 445 (5th Cir. 2005) (citing the AAMR factors).

First, Mathis alleges that Dr. Gilda Kessner administered the Weschler Adult Intelligence Scale ("WAIS") test to him in 2005, and his score was 64, which placed him in the range of "mild mental retardation." Mathis also presented two other IQ tests, a Weschler Intelligence Scale for Children-Revised ("WISC-R") test given in 1991 on which he scored a 79 and another WAIS given

4

in 2000, prior to the *Atkins* decision, on which he scored a 62. Typically, a person's IQ must be measured at 70 or below to qualify as mentally retarded. *Hearn*, 418 F.3d at 447 n.4.

Second, Mathis presented the affidavits of several lay witnesses who opined on Mathis's abilities in the so-called "adaptive skill areas." Mathis alleges that he was placed in "special education" classes in the eighth grade and failed the ninth grade. Additionally, Mathis notes his life-long difficulties counting money and following simple commands. Lay witnesses testified to his poor hygiene and odd sartorial habits. Finally, Mathis was noted to have difficulty forming social relationships because of his reluctance to communicate and his gullibility. Lay witnesses also noted their belief that Mathis was retarded. Based on all of the above, Mathis states that Dr. Kessner diagnosed him with mental retardation, applying the AAMR criteria.

Mathis does not present any specific evidence beyond the foregoing that his retardation manifested itself prior to the age of eighteen, as required by the AAMR. However, the lay testimony detailed Mathis's many problems during his childhood, similar to *In re Henderson*, 462 F.3d 413, 416 (5th Cir. 2006) & *Morris*, 328 F.3d at 741 (Higginbotham, J., concurring). Dr. Kessner's diagnosis of mental retardation under the AAMR indicates that she determined that Mathis's onset was prior to his eighteenth birthday.

The Director rebuts much of Mathis's evidence with counter-evidence. First, the Director notes that the IQ test given to Mathis in 1991, when he was below eighteen years of age, did not place him in the range of mental retardation.[1] The Director also notes that at the time of his

---

[1] The Director also responds to an argument that Mathis apparently made in his state *Atkins* claim but does not specifically raise before this court that his score on the WISC-R must be adjusted for the Flynn Effect. The Flynn Effect, which has not been accepted in this Circuit as scientifically valid, *In re Salazar*, 443 F.3d 430, 433 n.1 (5th Cir. 2006), posits that, over time, the IQ scores of a population rise without corresponding increases in intelligence and thus the test must be re-

incarceration in 2000, Dr. Michael Gilhousen conducted an IQ test and an evaluation of Mathis and did not diagnose mental retardation because of his belief that Mathis's limitations stemmed from heavy drug use and did not manifest themselves prior to Mathis's eighteenth birthday. The Director argues that Mathis's later IQ test does not establish mental retardation without some showing of pre-eighteen onset.

The Director argues that while Mathis's academic record is "less than stellar," many of his problems were caused by poor attendance and discipline problems rather than mental retardation. The Director also points out that much of Mathis's lay testimonial evidence is contradictory and self-serving at best. The Director contends that the vast differences in some of the witnesses' testimony at trial and at the *Atkins* hearing below render their opinions suspect. The Director also relies on Mathis's testimony at his trial, noting that it is coherent, indicates complex thought processes, and demonstrates self-interest. Additionally, the Director points out that Mathis did not present any evidence on the *Briseno* factors and argues that each of them weighs against a finding of mental retardation.

Cases in which this court has denied a motion to file a successive habeas claim based on Atkins usually involve sparse records, where no expert has diagnosed the movant with retardation. In *In re (Kia) Johnson*, 334 F.3d 403 (5th Cir. 2003), Johnson presented only three pieces of evidence: two letters from a forensic psychologist noting "areas of concern" and a seventh grade transcript that showed his many failing grades. *Id.* at 404. This evidence was not enough to make out a prima facie case of retardation. *Id.* Generally, having an expert testify that you are "at risk"

normalized over time. Because Mathis relies primarily on his IQ score on the test given by Dr. Kessner in 2005, we will make our determination of his ability to make out a prima facie case based on this score, while taking into account the existence of multiple measures of Mathis's IQ.

6

of mental retardation because of congenital factors, poverty, and abuse is not enough to support a successive Atkins petition, *In re Campbell*, 82 Fed. Appx. 349, 351 (5th Cir. 2003), nor is presenting a claim that your IQ test scores are flawed without presenting any affirmative evidence of the AAMR factors, *In re Salazar*, 443 F.3d 430, 432-33 (5th Cir. 2006). However, having a psychiatrist testify as to mental retardation provides significant, if not necessarily conclusive, prima facie support for an Atkins claim. *See generally Hearn*, 418 F.3d 444; *see also Salazar*, 443 F.3d at 434 (noting that "no professional who has ever personally evaluated Salazar has labeled him mentally retarded").

The evidence in this case is similar to the evidence at issue in *Henderson*, 462 F.3d 413, in which this court concluded that the petitioner had made a prima facie showing of mental retardation. Henderson presented evidence that his IQ had been tested as 66, while the State presented an IQ test on which he scored an 83. *Id.* at 415-16. Henderson presented lay testimony from several witnesses about his special education classes, poor hygiene, strange dressing habits, and poor social skills, while the State countered with testimony from prison officials about Henderson's good vocabulary and reading habits. *Id.* at 416-17. Neither party entered much evidence specifically on the point of pre-eighteen onset. *Id.* at 417. Based on the above evidence and Henderson's burden to show a prima facie case, the court granted Henderson's motion. *Id.*

In this case, both sides have expert opinions on whether or not Mathis is retarded based on the available evidence, and there are varying measures of Mathis's IQ. Additionally, while there is extensive lay testimony in this case, the Director argues that much of it is contradictory. A prima facie showing is only "a sufficient showing of possible merit to warrant a fuller [exploration] by the district court." *Henderson*, 462 F.3d at 415 (quoting *Hearn*, 418 F.3d at 445) (alteration in original).

We conclude, using *Henderson* as a guide, that Mathis has presented enough evidence to this court to warrant the district court's considering his *Atkins* claim under the framework laid out in *Reyes-Requena*. We note that the district court is free to reach its own conclusions on whether Mathis's motion "'conclusively' demonstrates that it does not meet AEDPA's second or successive motion requirements." *In re (Michael) Johnson*, 322 F.3d 881, 883 (quoting *Reyes-Requena*, 243 F.3d at 899). We express no view on whether Mathis will or ultimately should prevail on his claim of retardation.

We must also consider whether Mathis's application was timely filed within the one-year period of limitation allowed by the statute. 28 U.S.C. § 2244(d)(1). Unless Mathis is entitled to equitable tolling, his successive federal habeas claim raising the *Atkins* issue, filed initially on September 26, 2006, is well past the June 20, 2003 deadline.

When Mathis filed his application in state court raising his *Atkins* issue on June 20, 2003, the very last day of the AEDPA limitations period on *Atkins* claims, the time for filing in federal court was tolled for as long as his application was pending in the Texas courts. *See Wilson*, 442 F.3d at 874. "The Texas two-forum rule reasonably caused [Mathis] to delay filing a state habeas leaving himself only one day after the state court ruling to obtain authorization and file a federal habeas petition." *Id.* at 878. Indeed, Texas's modification of the two-forum rule was based on the "problematic situation when the Supreme Court announces a 'watershed' procedural or substantive change in the law which applies retroactively to all cases, even those on collateral review." *Soffar*, 143 S.W.3d at 806 (mentioning *Atkins* specifically). "[B]ringing his *Atkins* claim in state court would have required [Mathis] to abandon his initial federal habeas application and sacrifice permanently the claims within it in." *Wilson*, 442 F.3d at 876.

8

However, based on the record in this case, it is unclear if equitable tolling is warranted. After Mathis's initial federal habeas application was denied on March 11, 2005, over a month passed before Mathis filed his successive state habeas application raising his *Atkins* claim for the second time in state court. While we recognize that Mathis's situation is similar to others in which we have allowed equitable tolling of the statutory limitation, *see Wilson*; *In re Hearn*, 376 F.3d 447 (5th Cir.), *on rehearing* 389 F.3d 122 (5th Cir. 2004), we decline to address the issue in this case as neither party has briefed the issue. Instead, we "leave it for the district court to decide whether [Mathis's] case presents the 'rare and exceptional circumstances' that would entitle him to the benefit of equitable tolling." *Henderson*, 462 F.3d at 417; *see also Salazar*, 443 F.3d at 434 n.2 (It is an open question in this Circuit "whether, in our role as 'gatekeeper' under § 2244(b)(3)(C), we have the statutory authority to deny a motion for authorization solely on the basis of timeliness under § 2244(d)(1)(C).").

## III. CONCLUSION

For the foregoing reasons, we grant Mathis's motion to file a successive federal habeas claim.

9