**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 16, 2010

Lyle W. Cayce
Clerk

No. 08-70018

JAMES LEE HENDERSON,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, WIENER, and GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This court authorized James Lee Henderson, a Texas death row inmate, to file a successive federal habeas petition to assert a claim that he is mentally retarded and thus ineligible for execution under *Atkins v. Virginia*, 536 U.S. 304 (2002). In our order authorizing the filing, we noted that, unless the doctrine of equitable tolling applies, Henderson's successive petition is time-barred. *In re Henderson*, 462 F.3d 413, 417 (5th Cir. 2006). We left "it for the district court to decide whether Henderson's case presents the 'rare and exceptional circumstances' that would entitle him to the benefit of equitable tolling." *Id.*

No. 08-70018

The district court held that Henderson is not entitled to equitable tolling and did not reach the question whether the state court unreasonably determined that Henderson is not mentally retarded. The district court granted a certificate of appealability (COA) for two issues that are now before us for resolution: (1) whether Henderson's mental retardation claim is time-barred because he is not entitled to equitable tolling; and (2) whether the court nevertheless should reach the merits of Henderson's mental retardation claim because he is "innocent" of the death penalty.

I.

Henderson was convicted and sentenced to death for the October 1993 capital murder of Martha Lennox in Clarksville, Texas. His conviction and sentence were affirmed on direct appeal. *Henderson v. State*, No. 71,928 (Tex. Crim. App. 1996) (unpublished). He did not file a petition for a writ of certiorari.

On March 5, 1997, the trial court appointed Pamela Campbell to represent Henderson in state habeas proceedings. In Henderson's first state habeas application, filed on August 28, 1997, he raised claims of ineffective assistance of counsel. On July 8, 1998, the Texas Court of Criminal Appeals denied relief. *Ex parte Henderson*, No. 37,658-01 (Tex. Crim. App. July 8, 1998), *cert. denied*, 525 U.S. 1004 (1998).

On August 7, 1998, Henderson filed a motion for appointment of counsel in federal district court. The district court granted the motion on August 24, appointing Clifton Holmes and Eric Albritton (who currently represents Henderson on his *Atkins* claim) to represent Henderson. On October 27, 1998, the district court entered a scheduling order setting a deadline of January 4, 1999, for Henderson to file his federal habeas petition. The district court also stayed Henderson's execution, which was set for December 2, 1998.

In December 1998, Henderson's federal habeas counsel's investigator obtained a series of sworn statements from Deon Williams, who had testified

No. 08-70018

against Henderson at trial, in which Williams recanted much of his trial testimony. On December 31, 1998, Henderson filed a motion in federal court to vacate the scheduling order. That same day, he filed a successive state habeas application in the trial court, raising claims of perjured testimony based on Williams's recantation. The state habeas application was prepared by Clifton Holmes and Eric Albritton, the same attorneys the district court had appointed to represent Henderson in the federal habeas proceedings. On January 12, 1999, the district court entered an order granting Henderson's motion to vacate the scheduling order. In that order, the court stated that it expected Henderson to inform the court of the status of his state habeas application (which at that time was pending before the Texas Court of Criminal Appeals) by January 27, 1999.

Henderson complied by filing his federal habeas petition on January 27, 1999. It was held in abeyance pending the Texas court's ruling on Henderson's successive state habeas application. On October 27, 1999, the Texas Court of Criminal Appeals dismissed Henderson's second state habeas application as an abuse of the writ. Henderson next filed an amended federal habeas petition on March 1, 2000, asserting the claims regarding Deon Williams's recantation, that he had exhausted in his second state habeas application.

The district court conducted an evidentiary hearing in March 2001, and denied Henderson's petition for federal habeas relief that September. It granted a certificate of appealability on November 30, 2001.

On June 20, 2002, while Henderson's appeal of the district court's denial of habeas relief was pending in this court, the Supreme Court of the United States issued its opinion in *Atkins*, barring execution of mentally retarded prisoners.

On June 9, 2003, this court affirmed the district court's denial of habeas relief and denied Henderson's request to expand the COA. *Henderson v. Cockrell*, 333 F.3d 592 (5th Cir. 2003). Henderson filed a petition for rehearing

3

No. 08-70018

en banc on June 30, which this court denied on July 15, 2003. The Supreme
Court denied Henderson's petition for a writ of certiorari on January 26, 2004.
*Henderson v. Dretke*, 540 U.S. 1163 (2004).

On January 16, 2004, ten days before the Supreme Court denied certiorari,
Henderson was evaluated by a psychologist, Dr. Susana Rosin. Dr. Rosin
completed her report on March 19, 2004. Five days later, on March 24 (fifty-
seven days after the Supreme Court denied certiorari), Henderson filed a third
state habeas application in which he presented his *Atkins* claim. On April 24,
2004, the Texas Court of Criminal Appeals remanded the case to the trial court,
finding that Henderson had presented facts which, if true, might entitle him to
relief. *Ex parte Henderson*, No. 37,658-03 (Tex. Crim. App. 2004) (unpublished).

On remand, the trial court conducted a hearing and entered findings of
fact and conclusions of law, recommending that Henderson's *Atkins* claim be
denied. On January 25, 2006, the Texas Court of Criminal Appeals denied relief,
holding that Henderson had failed to show by a preponderance of the evidence
that he is mentally retarded. *Ex parte Henderson*, No. WR-37,658-03 (Tex. Crim.
App. Jan. 25, 2006) (unpublished).

About forty days later, on March 6, 2006, Henderson filed with this court
a motion for authorization to file a successive habeas petition, attaching a copy
of the proposed petition. On August 23, 2006, this court granted Henderson's
motion to file a successive habeas petition. *In re Henderson*, 462 F.3d 413. In
our order granting the motion, we noted that neither party had presented us
with a complete transcript of the testimony presented at the state habeas
evidentiary hearing. *Id*. at 416 n.3. We concluded, based on the limited
materials available to us, that Henderson had made a *prima facie* showing of
mental retardation. *Id*. at 417. We noted that, unless equitable tolling applies,
Henderson's successive habeas petition is time-barred. *Id*. We left "it for the
district court to decide whether Henderson's case presents the 'rare and

4

No. 08-70018

exceptional circumstances' that would entitle him to the benefit of equitable tolling." *Id.*

Henderson filed his successive federal habeas petition in the district court the following day, August 24, 2006.

On March 31, 2008, the district court denied relief, holding that Henderson's petition is barred by the statute of limitations. *Henderson v. Quarterman*, No. 1:06-CV-507, 2008 WL 906259 (E.D. Tex. 2008). The district court assumed that the Texas "two-forum rule"[1] presented a rare and exceptional circumstance for the purposes of equitable tolling. The court concluded, however, that Henderson did not pursue his claim diligently and was not entitled to equitable tolling because (1) fifty-seven days passed between the denial of certiorari (which ended the two-forum rule impediment to filing) and the filing of his state *Atkins* petition, (2) Henderson did not file anything in federal court while his state petition was pending, even after the two-forum rule was modified; and (3) forty days passed between the Court of Criminal Appeals denying the state *Atkins* writ and Henderson's filing of the motion for authorization to file a successive federal habeas petition.

The district court granted a COA for two issues:

(1) whether Henderson's *Atkins* claim is time-barred because he is not entitled to equitable tolling; and

(2) whether the court should reach the merits of Henderson's *Atkins* claim because he is "innocent" of the death penalty.

---

[1] Between 1972 and February 2004, Texas courts applied the "two-forum rule" to dismiss state habeas applications filed while federal habeas applications challenging the same conviction were pending. *See Ex parte Powers*, 487 S.W.2d 101 (Tex. Crim. App. 1972). The two-forum rule was modified on February 11, 2004, in *Ex parte Soffar*, 143 S.W.3d 804, 806-07 (Tex. Crim. App. 2004). Under the modified rule, the Texas Court of Criminal Appeals will "permit consideration of the merits of a subsequent writ . . . if the federal court having jurisdiction over a parallel writ enters an order staying all of its proceedings for the applicant to return to the appropriate Texas court to exhaust his state remedies." *Id.* at 807.

No. 08-70018

We heard oral argument on these issues in November 2009. At that time, the parties noted that the Supreme Court had granted certiorari in *Holland v. Florida*, 539 F.3d 1334 (11th Cir. 2008), *cert. granted*, 130 S.Ct. 398 (Oct. 13, 2009). We held this case in abeyance, pending the Supreme Court's decision in *Holland*, which was handed down on June 14. 130 S. Ct. 2549 (2010). At our direction, the parties filed supplemental letter briefs addressing the application of *Holland* to the facts of Henderson's case.

We now turn to address Henderson's argument that he is entitled to equitable tolling.

II.

A.

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides a one-year limitations period for filing habeas applications. 28 U.S.C. § 2244(d)(1). In cases such as Henderson's, the one-year period commences on "the date on which the constitutional right asserted was . . . newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). The constitutional right asserted by Henderson was recognized by the Supreme Court in *Atkins*, which was decided on June 20, 2002. The limitations period commenced on that date and expired on June 20, 2003. Henderson did not file his *Atkins* petition until August 24, 2006. Accordingly, unless equitable tolling applies, it plainly is time-barred.

At the time the district court ruled on Henderson's equitable tolling claim, the Supreme Court had not decided whether the AEDPA limitations period may be equitably tolled. In *Lawrence v. Florida*, 549 U.S. 327, 336 (2007), the Court assumed without deciding that equitable tolling is available. The Court stated that, to be entitled to equitable tolling, the petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. (internal

6

quotation marks and citation omitted); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (same).  In *Lawrence*, a death penalty case, the petitioner argued that his attorney's mistake in calculating the limitations period entitled him to equitable tolling.  549 U.S. at 336.  The Supreme Court rejected that contention, noting that, "[i]f credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline." *Id*.  The Court stated that "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." *Id*. at 336–37.

In *Holland*, the Supreme Court held specifically for the first time that AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases."  130 S. Ct. at 2560.  In doing so, the Court reiterated the requirements for equitable tolling that it had stated in *Lawrence* and *Pace*: "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 2562 (internal quotation marks and citations omitted).

The Court stated that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id*. at 2565 (internal quotation marks and citations omitted).  The Court held that the district court's conclusion, which rested on a finding of a lack of diligence, was incorrect, because:

> Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have [his attorney]—the central impediment to the pursuit of his legal remedy—removed from his case.  And, the *very day* that Holland discovered that his AEDPA clock had expired due to [his attorney's] failings, Holland prepared

his own habeas petition *pro se* and promptly filed it with the District Court.

*Id.*

With respect to the extraordinary circumstances prong, the Court rejected as "too rigid" the standard applied by the Eleventh Circuit, which had held that "even attorney conduct that is 'grossly negligent' can never warrant tolling absent 'bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part.'" *Id.* at 2563 (quoting *Holland*, 539 F.3d at 1339). The Supreme Court explained that the Eleventh Circuit's rule failed "to recognize that, at least sometimes, professional misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Id.* The Court reiterated that "a garden variety claim of excusable neglect" would not be sufficient to warrant equitable tolling. *Id.* at 2564 (internal quotation marks and citation omitted).

The Court emphasized that its precedent requires that a court of equity exercise its powers on a case-by-case basis:

> [C]ourts of equity can and do draw upon decisions made in other similar cases for guidance. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.

*Id.* at 2563.

Because the district court in *Holland* incorrectly found a lack of diligence and the Eleventh Circuit "erroneously relied on a overly rigid *per se* approach" in considering whether there were extraordinary circumstances, the Supreme Court observed that "no lower court has yet considered in detail the facts of this case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief." *Id.* at 2565. The Court also "recognize[d]

the prudence, when faced with an equitable, often fact-intensive inquiry, of allowing the lower courts to undertake it in the first instance." *Id*. (internal quotation marks and citation omitted). Accordingly, the Court left "it to the Court of Appeals to determine whether the facts in this record entitle Holland to equitable tolling, or whether further proceedings, including an evidentiary hearing, might indicate that [the State] should prevail." *Id*.

With respect to the case now before us, the district court assumed that the Texas two-forum rule constituted an extraordinary circumstance, but concluded that Henderson is not entitled to equitable tolling because he did not pursue his *Atkins* claim diligently. The district court based this ruling on the facts that (1) fifty-seven days passed between the denial of certiorari (which ended the two-forum rule impediment to filing) and the filing of his state *Atkins* petition; (2) Henderson did not file any *Atkins* related document or pleading in federal court while his state petition was pending, even though he certainly could have after the Texas Court of Criminal Appeals abandoned the two-forum rule; and (3) forty days passed between the Court of Criminal Appeals denying the state *Atkins* writ and Henderson's filing of his motion for authorization to file a successive federal habeas petition.

In his supplemental letter brief, Henderson challenges this holding of the district court by arguing that it erroneously applied a "maximum feasible diligence" standard rather than the "reasonable diligence" standard that the Supreme Court announced in *Holland*. The State counters in its supplemental letter brief that *Holland* does nothing more than reaffirm this court's prior equitable tolling jurisprudence.

Henderson also argues for a *de novo* standard of review. However, review of a district court's decision not to apply equitable tolling is controlled by our precedent, which requires that we review the district court's decision for abuse of discretion. *Flores v. Quarterman*, 467 F.3d 484, 485 (5th Cir. 2006); *Fisher v.*

*Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).   Because the decision to apply equitable tolling is discretionary, and because the district court has not had an opportunity to exercise its discretion in the light of *Holland*, we conclude that it is appropriate here to vacate the district court's judgment and remand this case to the district court to allow it to consider, in the first instance, whether the facts of this case warrant equitable tolling under the *Holland* standards.  *See Jones v. Thaler*, No. 09-70019, 2010 WL 2464998, at *1 (5th Cir. June 17, 2010) (unpublished) (vacating and remanding "[i]n order to permit the district court first consideration of Jones's petition in light of the Court's holding in *Holland*").

## B.

We now turn to consider the second issue presented in this appeal: whether the merits of Henderson's mental retardation claim must be considered because he is actually innocent of the death penalty.

The district court granted a COA for Henderson's alternative claim that, irrespective of any procedural bar, the court should reach the merits of his *Atkins* claim because he is actually innocent of the death penalty.   Thus, Henderson argues that, irrespective of equitable tolling, the court must address the merits of his mental retardation claim because failing to do so would constitute a fundamental miscarriage of justice.   In support of this claim, Henderson relies on *Sawyer v. Whitley*, 505 U.S. 333, 346–47 (1992), to argue that such a miscarriage of justice would occur in a case in which the petitioner is actually innocent of the death penalty because he is mentally retarded and thus, under the Eighth Amendment of the Constitution, ineligible for capital punishment.   He acknowledges that the Fifth Circuit has not so held, but cites for support *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005).   In *Souter*, the Sixth Circuit held that "where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to

pass through the gateway and argue the merits of his underlying constitutional claims." *Id.* at 602. Henderson contends that, under this exception, the district court should have reached the merits of his *Atkins* claim and granted relief.

The State contends that Henderson's reliance on *Souter* is misplaced, because the actual innocence exception addressed in that case is factual innocence of the charged crime itself, and not legal innocence of the death penalty. Even if the court were to establish such an exception to the AEDPA statute of limitations, the State argues, Henderson cannot show by clear and convincing evidence that no reasonable juror could find that he is not mentally retarded. The State contends further that, in this circuit, a claim of actual innocence does not constitute a rare and exceptional circumstance permitting equitable tolling. *See Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) (holding that a claim of actual innocence "does not constitute a 'rare and exceptional' circumstance [permitting equitable tolling], given that many prisoners maintain they are innocent."); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (same). Henderson replies that *Felder* recognized that a *showing*, as opposed to a mere *claim*, of actual innocence would be sufficient to justify equitable tolling. *See Felder*, 204 F.3d at 171 n.8 ("Felder has not made a *showing* of actual innocence, as the district court noted.").

In *Flanders v. Graves*, 299 F.3d 974, 977 (8th Cir. 2002), the Eighth Circuit rejected, "as a broad concept," the contention that actual innocence could be used to excuse a habeas petitioner's failure to file his petition within the limitations period. The court explained:

> It is our duty to apply statutes as written. The statute fixes a one-year period of limitations, and says nothing about actual innocence, even though other parts of AEDPA, enacted at the same time, do refer to this doctrine. It is not our place to engraft an additional judge-made exception onto congressional language that is clear on its face.

*Id*. (citations omitted). The court said that "[f]or such a claim to be viable, . . . a petitioner would have to show some action or inaction on the part of the respondent that prevented him from discovering the relevant facts in a timely fashion, or, at the very least, that a reasonably diligent petitioner could not have discovered these facts in time to file a petition within the period of limitations." *Id*. at 978. The Ninth Circuit recently decided, likewise, that there is not "an actual innocence exception that serves as a gateway through the AEDPA statute of limitations to the merits of a petitioner's claims." *Lee v. Lampert*, 610 F.3d 1125, 1133, 1136 (9th Cir. 2010).

Henderson has not cited any authority holding that there is an "actual innocence of the death penalty" exception to the AEDPA statute of limitations. We decline to create such an exception.

C.

The district court did not reach the merits of Henderson's mental retardation claim and did not grant a COA for it. The State asserts that this court may nevertheless affirm on any basis supported by the record and argues that, even assuming that Henderson is entitled to equitable tolling, Henderson's claim fails on the merits, because he has failed to show by clear and convincing evidence that he is mentally retarded. In the light of our decision to remand to the district court for a determination of whether Henderson is entitled to equitable tolling under the standards announced in *Holland*, and also in the light of the fact that the district court has not addressed the merits of Henderson's mental retardation claim, we think it is premature for us to consider that claim at this stage of the proceedings. Because there is no special exception from the AEDPA statute of limitations based on actual innocence of the death penalty, it is only if the district court finds that, in the light of *Holland*, these facts justify the tolling of the AEDPA limitations period, that the district court would need to address the merits of Henderson's *Atkins* claim.

No. 08-70018

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED with respect to its holding that there is no actual innocence exception to the AEDPA statute of limitations. The district court's holding that Henderson is not entitled to equitable tolling is VACATED, and the case is remanded to the district court for further consideration of that holding in the light of *Holland v. Florida*. If the district court finds that Henderson is entitled to equitable tolling, it will need to address the merits of his *Atkins* claim.[2]

---

[2] Unlike the dissent, the majority opinion addresses the arguments that Henderson has made and the issue for which the district court granted a COA. Henderson has never argued that the AEDPA statute of limitations does not apply to *Atkins* claims. In his brief, he acknowledges the applicability of the statute of limitations:

> Mr. Henderson's petition is based on *Atkins v. Virginia*, 536 U.S. 304 (2002), which was decided on June 20, 2002. Thus, the limitations period commenced on June 20, 2002 and expired June 20, 2003.

Brief of Appellant, August 22, 2008, at p. 13.

> In his request for a COA from the district court, Henderson stated:

> The district court failed to reach the alternative basis for overcoming the statute of limitations bar, that is, it would be a fundamental miscarriage of justice not to reach the merits because Mr. Henderson is *ineligible for the death penalty* because he is mentally retarded. *See Sawyer v. Whitley*, 505 U.S. 333 (1992). Jurists of reason would find it debatable whether the district court was correct in its procedural ruling in light of the fact that Mr. Henderson has established that he is *innocent of the death penalty.*

(Emphasis added.)

> In its order granting the COA requested by Henderson, the district court stated:

> Henderson contends that the Court failed to consider whether it would be a fundamental miscarriage of justice not to reach the merits of his claim because his status as a mentally retarded individual makes him *ineligible for the death penalty* under *Atkins*. *Put another way, Henderson asserts that because he is mentally retarded he is innocent of the death penalty. . . .*

> Acknowledging that the Fifth Circuit has not so held, Henderson argues that there is an actual innocence exception to the AEDPA's one-year statute of limitations, citing *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005). . . .

13

No. 08-70018

> While *Souter* deals with actual innocence of the crime, the Court is convinced that the issue of an actual innocence exception to the AEDPA's statute of limitations is debatable among jurists of reason or, at the very least, adequate to deserve encouragement to proceed further. . . .

*Henderson v. Quarterman*, Order on Certificate of Appealability, p. 2 (E.D. Tex. May 28, 2008) (emphasis added).

Henderson devotes only one paragraph of his brief to his argument that his claim falls within an exception to the statute of limitations. It states, in full:

> **II.    THE DISTRICT COURT ERRED BY FAILING TO REACH THE MERITS OF MR. HENDERSON'S *ATKINS* CLAIM BECAUSE HE IS "INNOCENT" OF THE DEATH PENALTY.**
>
> The Supreme Court has recognized that a court must address the merits of a defaulted or otherwise barred claim if failing to do so would constitute a fundamental miscarriage of justice. One such circumstance is present where the petitioner is "actually innocent" of the death penalty, that is, he is ineligible for capital punishment. *Sawyer v. Whitley*, 505 U.S. 333, 346-47 (1992). A mentally retarded prisoner is ineligible for the death penalty under the Supreme Court's *Atkins* decision. Thus, a mentally retarded prisoner is actually innocent of the death penalty. Although the Fifth Circuit has not so held, there is an actual innocence exception to AEDPA's one-year statute of limitations. *See Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005) (noting that the Constitution requires an actual innocence exception to AEDPA's statu[t]e of limitations). Under this exception, the district court should have reached the merits of Mr. Henderson's *Atkins* claim and granted him relief.

Appellant's Brief, August 22, 2008, at p. 26. The dissent does not address this argument, but instead creates an unasserted, unargued, unbriefed, and unraised argument for Henderson.

Furthermore, this court has always—and often with the dissenting judge joining—treated *Atkins* claims as being subject to the AEDPA statute of limitations. *See, e.g., In re Johnson*, 325 F. App'x 337 (5th Cir. 2009) (holding that *Atkins* claim was time-barred); *In re Lewis*, 484 F.3d 793 (5th Cir. 2007) (same). Opinions applying the AEDPA statute of limitations to *Atkins* claims, which the dissenting judge has joined, include *Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007) (remanding for determination of whether equitable tolling applied to *Atkins* claim and acknowledging that "the statute of limitations remains potentially dispositive"); and *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (stating that Wilson's habeas application asserting an *Atkins* claim "is clearly barred by AEDPA's statute of limitations and must be denied, unless he has demonstrated that he is entitled to equitable tolling of the limitations period"). To be sure, in this very case, the dissenting judge joined our opinion granting Henderson leave to file a successive habeas petition, in which we noted "that, unless the doctrine of equitable tolling applies, Henderson's successive petition is time-barred." *In re Henderson*, 462 F.3d 413, 417 (5th Cir. 2006). The dissent fails to explain how

14

No. 08-70018

AFFIRMED in part; VACATED in part; and REMANDED.

---

its new found friend is compatible company with the precedents that it has so recently embraced.

No. 08-70018

WIENER, Circuit Judge, dissenting.

I respectfully dissent. I do not do so because of any disagreement with the panel majority's post-*Holland* analysis of the role of equitable tolling in the AEDPA's one-year time bar. In fact, I remain hopefully confident that, in light of the timely and diligent performance of pro bono counsel, the district court will hold on remand that Henderson qualifies for equitable tolling and will afford him an evidentiary hearing on his *Atkins* claim. Rather, I dissent because I firmly believe that the AEDPA's time bar is inapplicable to Henderson's *Atkins* claim, grounded as it is in his alleged "intellectual disability."[1] The producing cause of my disagreement with the majority is its insistence that the "camel" of Henderson's *Atkins* claim pass through the "needle's eye" of *actual innocence*, thereby subjecting his and all other petitioners' *Atkins* claims to the AEDPA's statute of limitations.

The Supreme Court cases that have recognized the concept of "actual innocence" require the habeas petitioner to allege his *factual* innocence—that he simply did not commit the act in question—and, in some instances, to allege some constitutional flaw in his trial as well. Not so, however, for an *Atkins* claim: In *Atkins,* the Supreme Court held that executing an intellectually disabled person for committing *any* crime would violate the Eighth Amendment, regardless of such person's factual guilt of the particular crime as found in an errorfree trial of conviction. I am convinced, therefore, that Supreme Court precedent rejects the shoe-horning of an *Atkins* claim into the cubbyhole of

---

[1] As did the Supreme Court in *Atkins*, we have heretofore referred to "mental retardation." But, a recent act of Congress mandates use of the phrase "intellectual disability" in place of "mental retardation" in all federal enactments and regulations. *See* Rosa's Law, Pub. L. No. 111-256 (Oct. 5, 2010).

actual innocence and thereby subjecting such a claim to the AEDPA's time bar.[2] Here's why.

The Supreme Court has defined a claim of "actual innocence" as constituting either (1) a *substantive* argument that, as a matter of *fact*, the petitioner did not commit the acts that constitute his crime of conviction, adding that he must prove such an assertion by "truly persuasive" newly discovered evidence (*Herrera v. Collins*[3]); or (2) a *procedural* argument that constitutional errors at trial, along with newly discovered evidence of his factual innocence, undermine the certainty of the petitioner's conviction (*Schlup v. Delo*[4]). Unlike an *Atkins* claim, which makes unconstitutional the execution of the petitioner for *any* crime, the *Herrera* and *Schlup* varieties of actual innocence claims render unconstitutional the petitioner's execution or imprisonment for his *one crime of conviction only*. Actual innocence claims under both *Herrera* and *Schlup* focus on the particular facts of the petitioner's offense of conviction; *Schlup* claims also focus on his particular trial of conviction. Moreover, both of these types of actual innocence claims are conditioned on the existence of new evidence that was not presented at trial and that calls the petitioner's *conviction* into question.[5]

---

[2] I am likewise convinced that by doggedly pursuing an opportunity for their client to obtain a substantive determination whether he is "intellectually disabled" and thus immune from the death penalty, Henderson's long-serving pro bono counsel are not simply playing for time. Indeed, four justices of the Texas Court of Criminal Appeals joined a concurrence which stated that Henderson's "case presents a close question on the ultimate factual issue of mental retardation." *Ex Parte Henderson*, No. WR-37658-03, 2006 WL 167836, at *1 (Tex. Crim. App. Jan. 25, 2006) (Cochran, J., concurring).

[3] 506 U.S. 390, 417 (1993). The best example might well be the burgeoning number of conviction reversals on the basis of new or improved DNA evidence.

[4] 513 U.S. 298, 314-15 (1995).

[5] The Supreme Court has explained that "Schlup's evidence of innocence need carry less of a burden [than Herrera's]" because Herrera's evidence of factual innocence must "be strong enough to make his execution 'constitutionally intolerable' *even if* his conviction was

No. 08-70018

In *Sawyer v. Whitley*,[6] the Supreme Court defined "actual innocence" more expansively by including procedural claims based on constitutional error at *sentencing*. A *Sawyer* claim of actual innocence that addresses the sentencing phase of trial does so the way that a *Schlup* claim addresses such error at the guilt-innocence phase. To prevail on a *Sawyer* claim of actual innocence, the petitioner must show "by clear and convincing evidence that but for constitutional error at his *sentencing hearing*, no reasonable juror would have found him eligible for the death penalty under [state] law."[7]

As the Supreme Court stated in *Sawyer*, referring to these claims as "actual innocence of the death penalty" is "not a natural usage of those words."[8] The Court nevertheless strove "to construct an analog to the simpler situation represented by the case of a noncapital defendant."[9] Thus, instead of claiming factual innocence of the offense itself, *Sawyer's* sentencing variation on the actual innocence theme embodies a claim that the courts erred by sentencing to death a person who is factually innocent of either (1) the element or elements of such person's crime of conviction that make it a capital offense, or (2) the aggravating factors that make such person eligible to be sentenced to death.

The "eligible for the death penalty" language in *Sawyer* can be misleading when taken out of context. In defining the *Sawyer* variety of actual innocence claims, the Supreme Court further explained that "the 'actual innocence' requirement must focus on those elements that render a defendant eligible for

---

the product of a fair trial," whereas Schlup's evidence "must establish sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Id.* at 316 (emphases in original).

[6] 505 U.S. 333 (1992).

[7] *Id.* at 350 (emphasis added).

[8] *Id.* at 341.

[9] *Id.*

the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error."[10] The idea is that a constitutional error which occurred in the presentation of *mitigating* evidence during the sentencing phase would not necessarily undermine the jury's evaluation of the *aggravating* evidence that led to the sentence of death.

We have previously tried to clarify this point by noting that "*Sawyer* does not hold that anyone who is *legally ineligible* for a particular punishment is 'actually innocent.' *Sawyer* merely likens sentencing criteria to the elements of a crime, focusing on the factual, not legal, basis for the verdict."[11] So, gateway claims of actual innocence under both *Schlup* and *Sawyer* assert constitutional errors in convicting or sentencing a person, but only as to the particular crime for which he was indicted and tried. Diametrically opposed to such claims of actual innocence are claims of *constitutional immunity* from being put to death for any crime, regardless of when, where, or how committed—of which genre an *Atkins* claim is a prime example.

An *Atkins* claim asserts a per se violation of the Eighth Amendment on the ground that the intellectually disabled petitioner is *constitutionally immune* from—"legally ineligible for," rather than "actually innocent of"—the death penalty, regardless of his particular crime of conviction. Thus, *Atkins* claims are conceptually indistinguishable from those claims of death-penalty immunity recognized in *Ford v. Wainwright*[12] and *Roper v. Simmons*,[13] both of which focus on some trait that is *unique to the petitioner*, i.e., that he is insane (*Ford*) or under the age of sixteen (*Roper*). Such a trait is the thing that makes the

---

[10] *Id.* at 347.

[11] *Callins v. Johnson*, 89 F.3d 210, 215 (5th Cir. 1996) (emphases added).

[12] 477 U.S. 399, 410 (1986).

[13] 543 U.S. 551 (2005).

No. 08-70018

execution of that petitioner for *any crime* unconstitutional, notwithstanding his proven guilt in an errorfree trial and his death sentence imposed in an equally errorfree sentencing proceeding.

Significantly, these immunity claims are asserted independently of any constitutional error that might have been committed by defense counsel, or by the prosecutor, or by the courts. Generally, neither the petitioner nor any other party takes issue with the petitioner's underlying factual guilt.[14] Reduced to their essence, these immunity claims insist that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is [incompetent]. Petitioner's allegation of [incompetency] in his habeas corpus petition, if proved, therefore, would bar his execution."[15]

This crucial distinction explains why the Supreme Court has *never* discussed an *Atkins*, *Ford*, or *Roper* claim in terms of "actual innocence." Rather, for example, the Court has consistently confirmed that *Atkins* is a "categorical restriction[] on the death penalty."[16] In addition, the Supreme Court has expressly distinguished immunity claims—specifically one asserted under *Ford*—from claims of actual innocence, explaining: "Unlike [Herrera], Ford did not challenge the validity of his conviction. Rather, he challenged the constitutionality of his death sentence in view of his claim of insanity."[17]

---

[14] In most immunity claims, the petitioner does not dispute his guilt. Instead, he argues that "[t]he death penalty may not be imposed on certain classes of offenders, such as juveniles under 16, the insane, and the mentally retarded, no matter how heinous the crime." *Roper*, 543 U.S. at 568 (citations omitted).

[15] *Ford*, 477 U.S. at 410.

[16] *Graham v. Florida*, 130 S. Ct. 2011, 2021-22 (2010). *See also Kennedy v. Louisiana*, 128 S. Ct. 2641, 2650 (2008) (referring to *Atkins* in the context of the Supreme Court's "confining the instances in which the [death penalty] can be imposed"); *Roper*, 543 U.S. at 563-64 (explaining that *Atkins* "ruled that the death penalty constitutes an excessive sanction for the entire category of mentally retarded offenders").

[17] *Herrera*, 506 U.S. at 406.

No. 08-70018

We, in contrast, have tended to cloud the issue—as does the panel majority today—by trying to force the square peg of an *Atkins* claim into the round hole of the actual innocence framework, mistakenly employing the label and theory of "actual innocence" to do so.[18] In *In re Webster*,[19] we addressed 28 U.S.C. § 2255(h)(1)—the codification of the actual innocence exception to successive petitions for federal prisoners, which parallels 28 U.S.C. § 2244(b)(2)(B)(ii) for state prisoners—which requires petitioners to present "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant *guilty of the offense*."[20] We held that § 2255(h)(1) *cannot* encompass an *Atkins* claim "where [the petitioner] does not assert that the newly discovered evidence would negate his guilt of the offense of which he was convicted, *i.e.*, capital murder."[21] We based our *In re Webster* holding on the conclusion that "there is no reason to believe that Congress intended the language 'guilty of the offense' to mean 'eligible for a death sentence,'" presuming that *Atkins* claims would have been covered by § 2255(h)(1) if Congress had used the words, "actual innocence" or "eligible for the death penalty" instead.[22] Unfortunately, we failed to add the obvious corollary that an independent *Atkins* claim generally fails to qualify as a *Sawyer* actual innocence claim for the additional reasons that it involves neither the

---

[18] To be sure, other circuits have also confused this issue. *See, e.g.*, *Sasser v. Norris*, 553 F.3d 1121, 1125 n.4 (8th Cir. 2009) (applying *Sawyer* to an *Atkins* claim concluding generally that "[a] petitioner is 'actually innocent' of the death penalty where he is ineligible for the death penalty").

[19] 605 F.3d 256 (5th Cir. 2010).

[20] 28 U.S.C. § 2255(h)(1) (emphasis added).

[21] *In re Webster*, 605 F.3d at 257-58.

[22] *Id.* at 258-59 & n.7.

21

introduction of new evidence of factual innocence nor allegations of constitutional error at sentencing.[23]

This is why, to get past that confusion now, we must think outside the actual innocence box. Henderson has never asserted, per *Herrera*, that he did not do the deed and has never asserted, per *Schlup*, that some constitutional error at trial, in combination with new evidence of his factual innocence, undermines his conviction. Most significantly, although Henderson's first argument does mistakenly try (likely out of Sisyphean frustration) to fit his *Atkins* claim into the subset of *Sawyer* claims of actual innocence, nowhere does he point to any constitutional error in the sentencing phase of his trial; nowhere does he contest the jury's factual finding of aggravating factors warranting the death penalty; and nowhere does he identify any newly discovered evidence, which is an indispensable prerequisite to the assertion of every type of true actual innocence claim, viz., *Herrera*, *Schlup*, and *Sawyer*. Rather, Henderson advances the straightforward insistence that under *Atkins* he is constitutionally immune to the death penalty because he is intellectually disabled, nee retarded. Moreover, this in no way precludes his pleading the inapplicability of the AEDPA's time bar in the alternative, even if inconsistent with equitable tolling, which implicitly assumes the applicability of that time bar. All know that inconsistent alternative pleading has been recognized and approved since the enactment of the federal rules of procedure.[24]

And, even though Henderson's attempt to analogize his case to *Souter v. Jones*[25] is flawed, so is the State's reciprocal effort to distinguish this case from

---

[23] "The special *Sawyer*-version of the 'miscarriage of justice' exception is limited to assertions of errors of constitutional magnitude occurring at sentencing." *Fearance v. Scott*, 56 F.3d 633, 637-38 (5th Cir.), *cert. denied*, 515 U.S. 1153 (1995).

[24] *See* FED. R. CIV. P. 8(d)(2).

[25] 395 F.3d 577 (6th Cir. 2005).

No. 08-70018

*Souter*. The Sixth Circuit held in *Souter* that the petitioner had made a valid *Schlup* claim of actual innocence and that "equitable tolling of the one-year limitations period based on a credible showing of actual innocence is appropriate."[26] Although the panel majority today takes issue with *Souter*'s equitable tolling holding, that discussion is irrelevant here for the obvious reason that Henderson never purports to make the requisite showing of actual innocence—which he cannot do, of course, in the absence of newly discovered evidence and a constitutional error at sentencing.

This analytical enigma comes home to roost in the failed effort of the panel majority to apply the *Sawyer* "reasonable juror" standard here, where it simply has no place. The majority summarizes the State's position as: "Henderson cannot show by clear and convincing evidence that no reasonable juror could find that he is not mentally retarded." This differs significantly, however, from the *Sawyer* standard that asks, *but for* the constitutional error, would reasonable jurors have sentenced the petitioner to death? I find the panel majority's extensive discussion of actual innocence not only misplaced but also susceptible of unintentionally leading to further error by including the *Atkins* immunity defense within the set of all actual innocence defenses.

Properly, Henderson's unfettered right to assert his *Atkins* claim must be assessed entirely separately and apart from any actual innocence analysis and likewise without application of the AEDPA's time bar. Reduced to its essentials, Henderson's argument is that his *Atkins* claim should not be subject to any procedural bar because the Constitution forbids his execution vel non.[27] Like the

---

[26] *Id.* at 596-97, 599.

[27] I am puzzled by the panel majority's accusation, in its footnote 2, that—by insisting that the AEDPA's time bar is inapplicable to Henderson's *Atkins* claim of constitutional ineligibility for, i.e. "immunity from," the death penalty—I am advancing an argument that Henderson did not make, and thus waived. This is obviously not the case, but, don't take my word for it: The second paragraph of Part II.B of the panel majority opinion refutes that

No. 08-70018

panel majority in Part II.B of its opinion, I interpret Henderson to argue that a "fundamental miscarriage of justice" would result if, at this juncture, the AEDPA's statute of limitations were allowed to bar his *Atkins* claim. Even though to date the miscarriage of justice principle has only been applied as an exception to procedurally defaulted claims, that maxim is equally applicable to putatively time-barred claims. As the Supreme Court stated almost thirty years ago: "In appropriate cases those principles [of comity and finality] must yield to the imperative of correcting a fundamentally unjust incarceration."[28] Most recently, the Court acknowledged:

---

accusation when it correctly describes Henderson's "alternative claim" as:

> *[I]rrespective of any procedural bar*, the court should reach the merits of his *Atkins* claim because he is actually innocent of the death penalty. . . . *[I]rrespective of equitable tolling*, the court must address the merits of his mental retardation claim because failing to do so would constitute a fundamental miscarriage of justice[] . . . in a case in which the petitioner is actually innocent of the death penalty because he is mentally retarded and thus, under the Eighth Amendment of the Constitution, ineligible for capital punishment (emphases added).

What can "irrespective of any procedural bar" and "irrespective of equitable tolling" in Henderson's alternative argument possibly mean if not that the AEDPA's statute of limitations *does not apply to* his *Atkins* claim? Surely, he would not abandon his primary claim of equitable tolling if he were not asserting, in the alternative, the inapplicability of the AEDPA's time bar. When read in combination with its acknowledgment, in footnote 2, that Henderson devotes a paragraph in his brief to arguing my point—that *Atkins* claims are not subject to the AEDPA's time bar—the panel majority's footnote statement that my argument is "unasserted, unargued, unbriefed, and unraised" by Henderson just doesn't hold water.

To verify this, all that needs be done is to (1) take the panel majority's description of Henderson's alternative claim and my analysis of why Henderson's *Atkins* claim should not be barred by time or procedure, (2) set them down, side by side, and (3) read each in light of the other: It will be obvious that, together, the panel majority's succinct description of Henderson's unwaived argument and the quotation of Part II of Henderson's brief in the majority's footnote 2 describe precisely the position that I advocate here. The majority's mischaracterization of my point in its footnote 2 is, at best, a semantic quibble. So, if you take it at all, do so with a grain of salt.

[28] *Engle v. Isaac*, 456 U.S. 107, 134 (1982).

24

No. 08-70018

> AEDPA seeks [to eliminate delays in the federal habeas review process] without undermining basic habeas corpus principles and while seeking to harmonize the new statute with prior law, under which a petition's timeliness was always determined under equitable principles. . . . The importance of the Great Writ, the only writ explicitly protected by the Constitution, Art. I, § 9, cl. 2, along with congressional efforts to harmonize the new statute with prior law, counsels hesitancy before interpreting AEDPA's statutory silence as indicating a congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open.[29]

If we were to condone the barring of Henderson's *Atkins* claim by the AEDPA's statute of limitations, without ever affording him a federal opportunity to demonstrate his intellectual disability, then allowing the State to execute him would not only be "fundamentally unjust"; it would be unconstitutional per se.[30]

In conclusion, even though the panel majority is correct that Henderson does not assert a valid *Sawyer* claim of actual innocence, its reasoning is fatally flawed by erroneously presuming that every *Atkins* claim is necessarily an actual innocence claim. But, as I have laboriously demonstrated above, that assumption simply is wrong: *Sawyer* bars the execution of a petitioner who did not factually commit the elements of the crime that made it a capital offense or the aggravating factors that led the jury to impose the death penalty, or both. In stark contrast, *Atkins* bars the execution of an intellectually disabled petitioner even if the courts are absolutely certain (and the petitioner does not contest) that

---

[29] *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (internal citation omitted).

[30] Traditionally, the "miscarriage of justice" exception has been considered to be synonymous with the "actual innocence" exception. *See Sawyer*, 505 U.S. at 339 (referring to "the miscarriage of justice, or 'actual innocence,' exception"). Nonetheless, there is a viable argument that the principle can extend beyond the precise nuances of "actual innocence" claims.

he committed each element of the capital offense and that he is guilty of those aggravating factors that led to his death sentence.

Thus, it is its foundational error in classifying an *Atkins* claim as one of actual innocence that leads the panel majority to cause Henderson's claim to fail under the *Sawyer* analysis. This is error because his simply is not a claim of "actual innocence" to begin with.[31] The obvious reason why his claim fails to meet the *Sawyer* standard is that the *Sawyer* standard is not applicable to an *Atkins* claim. The same is true of the AEDPA's statute of limitations: It was never meant to apply, and never should be applied, to an *Atkins* claim—or to a *Ford* or *Roper* claim for that matter.[32]

---

[31]   Notably, the panel majority never addresses the substance of my analysis that Henderson's *Atkins* claim was never meant to fit (and indeed cannot fit) into the actual innocence framework.

[32]   In its footnote 2, the panel majority faults my dissent for not making "compatible company" with recent opinions that I joined. In cherry picking isolated statements in two of the cases that it references, however, the majority overlooks the outcomes reached in those opinions—outcomes that are very much compatible with my dissent.

In one, *Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007), we remanded the petitioner's *Atkins* claim for consideration of equitable tolling in light of our substantive determination that, indeed, the petitioner was intellectually disabled. Because the petitioner had sought equitable tolling on the ground that he lacked the mental capacity to represent himself *pro se*, we concluded that "the merits blend inseparably into the question of equitable tolling here" and that "answering whether [petitioner] is retarded is logically antecedent—if not a core element itself—to determining whether equitable tolling is available." *Id.* at 355. We therefore remanded the case to the district court for consideration of equitable tolling *in pari materiae* with our holding that Rivera's *Atkins* claim was meritorious. The sequence of the *Rivera* proceedings was precisely the reverse of that in the instant case. In *Rivera*, we did not—repeat, did not—*apply* the AEDPA's statute of limitations to bar the petitioner's *Atkins* claim. Similarly, in *In re Wilson*, 442 F.3d 872 (5th Cir. 2006), we declined to apply the AEDPA's statute of limitations to bar the petitioner's *Atkins* claim. Instead, we simply held that the timing of the particular petitioner's pursuit of his claim there at issue qualified for equitable tolling, implying nothing more than that *if* the AEDPA's time bar applied it would be trumped by equitable tolling. *See id.* at 878.

Incidentally, the other two cases to which the panel majority cites—and in which I did *not* join—relied on *In re Wilson* for the proposition that the AEDPA's statute of limitations bars an *Atkins* claim in the absence of equitable tolling. *See In re Lewis*, 484 F.3d 793, 798 n.20 (5th Cir. 2007) ("We have previously applied the limitations period to *Atkins* claims . . . .") (citing *In re Wilson*, 442 F.3d 872; *In re Johnson*, 325 F. App'x 337, 340 (5th Cir. 2009) ("[T]his

No. 08-70018

It is axiomatic that a fundamental miscarriage of justice generally excuses a procedural default of a petitioner's claim the substance of which, if credited, would avoid such a miscarriage. It is equally axiomatic that a potential miscarriage of justice must trump the AEDPA's time bar to an otherwise properly asserted *Atkins* claim, even if that assertion is made outside the limitations period and is not equitably tolled. Properly analyzed, a fundamental miscarriage of justice will occur if Henderson is executed without having been given a federal habeas opportunity to prove, per *Atkins*, that he is intellectually disabled.[33]

It is for these reasons that, with respect, I am compelled to dissent.

---

Court has never held that *Atkins* claims are somehow exempt from the limitations period. To the contrary, this Court has held that a successive federal petition based on mental retardation claims is subject to § 2244(d)'s one-year statute of limitations . . . .") (citing *In re Wilson*, 442 F.3d at 877-78; *In re Lewis*, 484 F.3d at 796). As explained above, however, that simply was not our holding in *In re Wilson*.

Thus, although the opinions in *Rivera* and *In re Wilson* might have implicitly assumed arguendo that the AEDPA's statute of limitations would apply to an *Atkins* claim in the absence of equitable tolling, in neither case did we actually apply that time bar. My dissent, I submit, is not only "compatible company" with these previous decisions, but is a natural extension of them: Despite employing equitable tolling to avoid application of the AEDPA's statute of limitations to *Atkins* claims in the past, my panels never needed to decide—and thus never did decide (as the panel majority does today)—whether the AEDPA's the statute of limitations would absolutely bar an *Atkins* claim when and if a petitioner might fail to qualify for equitable tolling. To the extent that the panel majority nevertheless remains convinced of my inconsistency, however, I shall rely on Emerson's observation that "a foolish consistency is the hobgoblin of little minds."

[33] If I am right in substance but my colleagues interpret the binding precedent of this court as holding that the AEDPA's statute of limitations does apply to *Atkins* claims, then this issue is ripe for en banc reconsideration or—in the absence of that—certiorari.